Robert H. Bodholdt v. Commissioner. Robert H. Bodholdt and Janie C. Bodholdt v. Commissioner.
Bodholdt v. Commissioner
Docket Nos. 78559, 78560.
United States Tax Court
T.C. Memo 1961-87; 1961 Tax Ct. Memo LEXIS 261; 20 T.C.M. (CCH) 390; T.C.M. (RIA) 61087; March 29, 1961
Robert H. Bodholdt, pro se, 5705 Colfax Ave., Alexandria, Va. Ferd J. Lotz, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion In Docket Nos. 78559 and 78560 respondent has determined deficiencies in income taxes in the respective amount of $414.19 and $182.67 for the years 1955 and 1956. These deficiencies result from respondent's disallowance of certain deductions from gross income made by petitioners. The issues presented for our decision are: (1) Whether the amounts spent for maintaining an automobile in the years 1955 and 1956 are deductible transportation expenses under section 62(2)(C); *263 (2) the determination of the amount, if any, of the expenses incurred by petitioner Robert for meals and lodging while away from home in excess of the reimbursement payments received from his employer during the taxable years 1955 and 1956; (3) whether certain expenses incurred by petitioner Robert as an employee are deductible from gross income during the taxable years 1955 and 1956 under section 62(2)(A); and (4) whether petitioner Robert sustained a business loss identifiable and deductible during the taxable year 1955. Findings of Fact The petitioner in Docket No. 78559 is Robert H. Bodholdt, who filed an individual income tax return for the taxable year 1955. The petitioners in Docket No. 78560 are Robert H. and Janie C. Bodholdt, husband and wife, who filed a joint individual income tax return for the taxable year 1956. Both returns were filed with the district director of internal revenue at Richmond, Virginia. As Janie C. Bodholdt is a party to this proceeding solely as a result of the filing of a joint return with her husband we shall hereinafter refer to Robert H. Bodholdt as the petitioner. During the years involved herein the petitioner was employed as an airline *264 pilot by Allegheny Airlines, Inc., hereinafter referred to as Allegheny. The petitioner was based at the Washington National Airport in Washington, D.C., and he resided with his wife in Alexandria, Virginia. When called upon to make a flight he used his automobile for the purpose of transporting himself to the airport. Petitioner's employment status was that of a "reserve captain." Being on reserve status required petitioner to be on 24-hour call to take flights which regularly assigned pilots might not be able to fly because of sickness or other emergency. If petitioner were unable to respond to a call immediately, a less-senior reserve pilot who was available would be called to take his place. A failure to respond to a call was grounds for disciplinary action or suspension from flight duty and, because petitioner's salary was computed from a combination of "base-pay" plus an hourly rate while on duty, his nonavailability for flight duty would result in a loss of income. Petitioner's employer, subsequent to the taxable years in issue, officially notified its pilots that the nature of its operation was such that if reliable public transportation were not available then private automobile *265 transportation should be provided by the pilots concerned. In his income tax returns for the taxable years 1955 and 1956 the petitioner reported the following expenses: 1955
1956
Gas, Oil, Grease, Wash-
ing, etc.
$ 460.00
$ 525.00
Repairs
198.42
102.90
Battery Replacement
11.00
Tires, Tubes
55.00
Insurance
75.70
103.60
Parking Fees
35.00
Depreciation
400.00
539.17
$1,145.12
$1,360.67 He claimed 50 percent of the 1955 total, or $572.56, and 35 percent of the 1956 total, or $476.23, as transportation expenses deductible from gross income. In computing the number of days he was away from home, petitioner tacked short morning-to-afternoon flights with short afternoon-to-evening flights on separate days in order to make an entire day away from home. He claimed a total of 84 days during the calendar year 1955 and 60 days during the year 1956, although he actually engaged in a total number of flights in excess of those figures. He was away from home overnight for a total of 56 days in 1955 and 35 days in 1956. Allegheny reimbursed petitioner for each meal period he was away from his home base at a fixed rate per meal. The amount petitioner *266 received for each meal was less than the amount he actually spent. For reasons of convenience and safety petitioner took his meals in the more-expensive restaurants at the airport rather than the snackshops and sodabars. On his 1955 return petitioner claimed total away-from-home expenses for meals and lodging in the amount of $588. He indicated that he had been reimbursed in the amount of $407.40, based upon 84 days at $4.85 per day. He claimed the difference, or $180.60, as a deduction from gross income. On his 1956 return petitioner reported total expenses of $420, calculated at $7 per day for 60 days, and indicated that he had been reimbursed in the amount of $291, based upon 60 days at $4.25 per day. [1] Again petitioner claimed the difference, $129, as a deduction from gross income. The petitioner was also required to have a thorough physical examination every 6 months in order to maintain his airline license. He paid for his own examination. He also furnished his own flashlights, topographical maps, and uniforms. He was not reimbursed *267 by his employer for any of these expenses. On his income tax returns for the years in issue the following amounts were reported and claimed as deductions from gross income: 1955
1956
Compulsory Medical Exami-
nations
$30.00
$30.00
Uniforms, Cleaning & Repairs
38.00
26.00
Misc. Necessary Flight Mate-
rial
15.00
10.00
New Uniforms
80.00 On the 1955 return petitioner claimed as a deduction from gross income the amount of $15, labeled "Acct. Fees for Various Tax Forms." The petitioner elected to compute his income taxes for the taxable years 1955 and 1956 using the standard deduction authorized by section 144 of the Internal Revenue Code of 1954 in lieu of itemizing his deductions. During the year 1955 petitioner was a part-time salesman at the Kitt Music Company of Washington, D.C. In order to demonstrate high-fidelity recording and playback equipment the petitioner made a taperecording of a performance of the National Symphony Orchestra, hereinafter referred to as the Orchestra, and the Howard University Chorus, hereinafter referred to as the Chorus. The tape-recording faithfully reproduced the original sound as it was broadcast *268 over the Good Music Station, Inc., WGMS, Washington, D.C., hereinafter referred to as WGMS. Petitioner contacted representatives of the Chorus and found that some members were interested in purchasing copies of the recording. Thereafter he had 250 records made and sold 29 of them to members of the Chorus. In June 1955 attorneys for the Orchestra and the Good Music Station, Inc., the owner and operator of WGMS, advised petitioner that it was unlawful for him to make and sell such recordings and that he should deliver all of the recordings of the broadcast in his possession, as well as the monies received from the sale of the records, to the Orchestra. On or about June 24, 1955, a representative of WGMS, referred to as "Rogers," called upon Malcolm Taylor, who had been entrusted with the distribution of the records to the Chorus members. Taylor was advised that Rogers had in his possession a court order which required Taylor to turn over the records and the monies collected from the distribution of the records. Taylor complied, and thereafter the petitioner, on December 21, 1955, instituted proceedings against Rogers for unlawfully taking petitioner's records and proceeds of sale *269 of such records. On January 23, 1956, the records and monies taken by Rogers were returned to petitioner. On the same day petitioner was served with a complaint filed by WGMS which sought a preliminary injunction against him on the grounds that any further sale or public dissemination of the recordings would cause WGMS irreparable damage. On February 7, 1956, the United States District Court for the District of Columbia granted a temporary injunction pending a final hearing of the cause. On February 5, 1958, the dispute between the petitioner and WGMS was settled by mutual agreement. The settlement agreement provided that copies of the recording made by petitioner could be purchased by the members of the Chorus and the Orchestra on or before May 30, 1958, at $4 per copy. Petitioner could retain $380.24 of the proceeds from the sales, but any amount beyond that figure was to be divided equally between The Retirement Fund of Local 161, District of Columbia Federation of Musicians, and the Howard University Chorus. Both the "master stampers" from which the records were made and the unsold copies of the recording, other than a reasonable number petitioner might retain for his personal *270 use and not for sale, were to be turned over to WGMS and destroyed. Both parties to the agreement were released from further liability. On petitioner's income tax return for the taxable year 1955, among other listed items under the general heading of "Business Expenses necessary for production of incomes (Airline pilot)," there appears the figure "$340.00" following the notation "Legal Exp. for protection of income in Business lawsuit (contesting injunction)." In his petition the petitioner asserts that the sum disallowed as a legal expense was misnamed through an error on the part of the accountant preparing petitioner's return, despite the correct information supplied by the petitioner, and that actually this figure represented a business loss sustained by petitioner during the taxable year as a result of his recording venture. Opinion KERN, Judge: The burden of proving error in the respondent's disallowance of the claimed deductions is on the petitioner. In his testimony he made only the most general references to the amounts in controversy. He offered no other evidence to substantiate his claims. All of the figures used herein, with the exception of the number of days petitioner *271 was away from home overnight, were taken from the tax returns filed by petitioner. It is well settled that an entry on a tax return is not evidence that the expenditure was actually made. Swayne Lumber Co., 25 B.T.A. 335. Petitioner relies upon section 62(2) of the Internal Revenue Code of 1954, [2] the pertinent provisions of which are set out in the margin. *272 Petitioner contends that his automobile was used in his employment and that the automobile was essential to the proper performance of his duties. The automobile was used to provide a means of transportation from the petitioner's home in Alexandria, Virginia, to the Washington National Airport, his place of employment. Petitioner's duty to his employer was to pilot airplanes and, while it is true he had to first get to the airport in order to perform that duty, getting to the airport is not the "connection" with one's employment to which the statute is directed. While the necessity for punctuality may be more pressing in petitioner's case, the use of his automobile is essentially a commuting use and, as such, it is an expense personal in nature and not deductible from gross income. William L. Heuer, Jr., 32 T.C. 947. In the course of his testimony petitioner testified that he "was also involved in some engineering work with the airline which required certain trips up to Baltimore and certain subcommittee meetings here in town in regard to settling engineering problems involving the analyses of airports for aircraft gross weights, and so forth," and that "[his] trips *273 in [his] automobile involved this as well." He made no reference in his petition or his briefs to the deductibility of any traveling expenses on account of these trips. There is no other testimony relating to such expenses. Under the circumstances we do not feel justified in making any finding of fact with regard to the amount of his traveling expenses in connection with these "certain trips" which might be deductible. The petitioner also contends that his meal expenditures while away from home exceeded the reimbursement payments received from Allegheny, and that the excess is deductible from gross income under section 62(2)(B). But the number of days he was actually away from home overnight was less than the number of days claimed on his return. The difference is accounted for by petitioner's belief that he could tack, for income tax purposes, morning trips with afternoon trips on separate days and his inclusion of these composite days in his total figure. The law is well settled that only the cost of meals purchased while away from home overnight for some business purpose is deductible. Fred Marion Osteen, 14 T.C. 1261; Joseph M. Winn, 32 T.C. 220; *274 Al J. Smith, 33 T.C. 861; and Allan L. Hanson, 35 T.C. 413 (December 12, 1960). Petitioner did not testify as to the amounts spent by him for meals except for the general statement that the amounts were in excess of the amounts reimbursed to him by Allegheny. Assuming that he spent the amount per day for food which he sets forth in his 1956 return ( $7 per day), he would have deductible expenses in 1955 of $392 (56 days at $7) and $245 in 1956 (35 days at $7). In each of those years he received reimbursement from Allegheny in an amount in excess of his potential deduction. We sustain the respondent's determination on this issue. Petitioner's argument in support of his claimed deductions from gross income for the costs of medical examinations, uniforms, and flight materials is based upon an erroneous interpretation of the statutes involved. He relies upon Marcus O. Benson, 2 T.C. 12, affd. 146 F. 2d 191, in which a police officer was permitted to deduct expenses for uniforms from gross income. The cited case is not applicable here. We are concerned with a taxpayer who has elected under a subsequent and different law to take the standard *275 deduction, an option which was not available to the taxpayer in the Benson case. The statutory provision upon which the petitioner herein relies is section 162 of the Internal Revenue Code of 1954, a section which must be read in conjunction with section 161. The items referred to in section 161 are allowable as deductions only if the taxpayer computes his taxable income under section 63(a), [3] and among the items specified are the trade and business expenses permitted by section 162. But the petitioner chose to take the standard deduction authorized by section 141, and his taxable income must be computed under section 63(b), [4] which specifically defines taxable income as adjusted gross income minus the standard deduction and the deduction for personal exemptions. The petitioner, having elected to take the standard deduction and therefore to compute his taxable income under section 63(b), may not thereafter invoke section 162 to further reduce his gross income unless such a deduction from gross income is authorized by section 62(2)(A). See footnote 2. *276 The petitioner has not shown that he is entitled to the deduction from gross income permitted by section 62(2)(A). He was not reimbursed for his expenses by his employer and he has not attempted to show that any other expense allowance arrangement was made. Joseph M. Winn, supra. Accordingly, we decide in favor of respondent on this issue. The respondent's disallowance of the claimed deduction for "Acct. Fees for Various Tax Forms" in the amount of $15 in the taxable year 1955 was not assigned as error in the petition, although it was grouped with the miscellaneous employee expenses in petitioner's reply brief. No evidence was offered to support the deduction, and we must sustain the respondent's determination that it is an expense personal in nature and therefore not deductible from gross income. Frank G. Hogan, 3 T.C. 691. Petitioner also contends that he sustained a business loss in the taxable year 1955 in the amount of $340 which was erroneously reported as a legal expense by the accountant who prepared his return. But we still have no evidence to support the amount of the alleged loss and, more particularly, that any loss was actually sustained *277 in 1955. Petitioner has not shown the amount of his total expenses or the amount of the income received from the recordings. While it may have become clear to petitioner that he had improperly recorded a broadcast and that he would be denied the expected profit from his enterprise, it was by no means certain that he would not be permitted to recover his costs. While we are left to speculate on this point, there is evidence in the record to indicate that the settlement agreement between petitioner and WGMS contemplated just such an arrangement, for petitioner was only required to give up those amounts in excess of $380.24. The petitioner has not shown the amount of the alleged loss or that the alleged loss occurred during the taxable year in issue, as required by section 165 of the 1954 Code. Accordingly, we sustain the respondent on this issue. Decisions will be entered for the respondent. Footnotes
1. The figure of $4.25 per day is evidently a typographical error since 60 days at $4.85 per day would equal the claimed $291 reimbursement.↩
2. SEC. 62. ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: (2) Trade and business deductions of employees. - (A) Reimbursed expenses. - The deductions allowed by part VI (Sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer. (B) Expenses for travel away from home. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. (C) Transportation expenses. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee. * * *↩
3. SEC. 63. TAXABLE INCOME DEFINED. (a) General Rule. - Except as provided in subsection (b), for purposes of this subtitle the term "taxable income" means gross income, minus the deductions allowed by this chapter, other than the standard deduction allowed by part IV (sec. 141 and following). ↩
4. (b) Individuals Electing Standard Deduction. - In the case of an individual electing under section 144 to use the standard deduction provided in part IV (sec. 141 and following), for purposes of this subtitle the term "taxable income" means adjusted gross income, minus - (1) such standard deduction, and (2) the deductions for personal exemptions provided in section 151.↩