JOSEPH M. WINN AND EMMA WINN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64541.   Filed April 28, 1959.

*John S. Pickett, Jr., Esq.*, for the petitioners.
*John W. Dierker, Esq.*, and *Allen T. Akin, Esq.*, for the respondent.

TIETJENS, *Judge:* This proceeding involves a deficiency in income tax for the taxable year 1953 in the amount of $280.84.

The issues for decision are: (1) Whether petitioners, in computing their adjusted gross income, are entitled to deduct the amounts expended by Joseph Winn for travel, meals, and work clothes; and if so (2) what were those amounts.

### FINDINGS OF FACT.

Joseph M. Winn (hereinafter referred to as the petitioner) and his wife, Emma Winn, resided in Longview, Texas, during the taxable year 1953. They filed a joint Federal income tax return for that year with the district director of internal revenue at Dallas, Texas.

During 1953, petitioner held two jobs, being employed simultaneously by A. H. Tarver and by the Arkansas Fuel Oil Corporation. His employment with Tarver consisted of supervisory and maintenance work in connection with nine oil wells operated by Tarver on two mineral leases. His employment with Arkansas consisted of the performance of duties as a yard foreman at that company's plant.

In connection with his Tarver employment, it was understood that petitioner would furnish his own transportation and bear any travel expenses incurred in the performance of his duties. The Tarver leases were located 5 miles apart. During the taxable year in issue, petitioner lived on one of these leases. In the course of his employment it was necessary that he make a daily round trip between these leases during the taxable year. His employment further required him to make 2 round trips weekly to Kilgore, Texas, located 25 miles from his home, in order to test the salt content of water obtained from certain of the wells, and monthly round trips to Greggton, Texas, located 7 miles from his home, in order to purchase well supplies, and to Shreveport, Louisiana, located 84 miles from his home, in order to report to his employer. In addition to these trips, petitioner traveled at least 500 miles in connection with his Tarver employment on miscellaneous errands. Petitioner expended $137.55 during 1953 on his trips to Shreveport.

Petitioner, in making his monthly trips to Shreveport, would leave home early in the morning, and would return by evening. As a result, he would eat his noonday meal in Shreveport for which he

expended between $1.50 and $2. In addition, he frequently found it necessary to purchase food and refreshments for various business acquaintances whom he would chance to meet on these trips.

The Arkansas Fuel Oil Corporation plant at which petitioner was employed was located 5 miles from his home. He worked a 5-day week for Arkansas during 1953, using his automobile for the trips to and from the plant. Because of the nature of his employment with Arkansas, it was necessary that he wear hard-toed shoes, special work clothes, and special work gloves. The shoes cost $15 a pair, and the gloves, 35 cents a pair. During 1953, petitioner purchased at least 2 pairs of hard-toed shoes.

Petitioner kept a record of the amounts he expended during the taxable year in the course of his employments. At the close of the year, he took these records to his accountant for use in the preparation of his tax return. The records were never returned to him, despite several attempts to regain them.

In arriving at their adjusted gross income for 1953, petitioners deducted the amount of $1,379.32 as net travel expenses incurred in connection with Joseph's employments. This amount was composed of $1,279.32, claimed as deductible automobile business expenses, and $100, claimed as an expense incurred in "Trip to Headquarters Shreveport, etc." They reported the total number of miles traveled for all purposes during the year was 25,000, 75 per cent of which they claimed was business use. They further claimed they expended $1,705.75 on their automobile during 1953, of which they attributed $426.43 to personal use. Though they reflected the sum of $75 as expended on "Clothes for Gasoline Plant," they failed to claim a deduction on their return for this item. They also claimed the optional standard deduction on their return.

Respondent disallowed the claimed deduction of $1,379.32 in its entirety, thereby increasing petitioners' adjusted gross income and allowing a corresponding increase in the standard deduction.

OPINION.

Petitioners have filed no briefs, and thus we are unaware of the legal basis of their claim for the deductions now under consideration. However, it would appear from the opening statement of their counsel, from the pattern developed at trial, and from the election on their return of the optional standard deduction, that they claim the right to deduct, in arriving at their adjusted gross income for 1953, the amount of $1,279.32 for automobile business expenses, the amount of $100 for meals and entertainment purchased in Shreveport, and the amount of $75 for work clothes purchased during the taxable year.

Respondent maintains that none of the claimed expenditures is deductible under section 22(n) [1] in arriving at adjusted gross income, inasmuch as they were not trade or business expenses within the meaning of section 22(n)(1), nor expenditures incurred in connection with employment while away from home within the meaning of section 22(n)(2), nor expenditures for which petitioner was reimbursed within the meaning of section 22(n)(3). With the exception of the amounts expended in traveling to and from Shreveport each month, we agree with the respondent.

So far as the facts of record go, it is clear that petitioner did not operate under a reimbursement or other expense allowance arrangement with Tarver, his employer. It is equally clear that none of the claimed expenditures was attributable to a trade or business carried on by the petitioner. Therefore, if deductible under section 22(n) at all, the expenses in issue must constitute "expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee" within the meaning of section 22(n)(2).

For tax purposes, an individual's home means his place of business, employment, or post or station at which he is employed. In the instant case, petitioner's tax home was the area in and about the Tarver leases which can reasonably be delineated as his place of business. Petitioners have made no attempt to characterize any particular area as the Tarver place of business, and since the record merely recites the extent of travel required by the employment, we must do the best we can with the facts before us. From our consideration of the record as a whole, we have concluded that the area of petitioner's Tarver employment encompassed the two leases, and Greggton and Kilgore, Texas. Any travel within this area therefore was not "away from home" within the meaning of the statute, and the expenses incurred by petitioner in operating his automobile in such travel were not deductible under section 22(n)(2). *Frank N. Smith*, 21 T.C. 991 (1954). This conclusion precludes deduction of the amounts

---

[1] SEC. 22. GROSS INCOME. [I.R.C. 1939]

(n) DEFINITION OF "ADJUSTED GROSS INCOME".—As used in this chapter the term "adjusted gross income" means the gross income minus—

(1) TRADE AND BUSINESS DEDUCTIONS.—The deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee

(2) EXPENSES OF TRAVEL AND LODGING IN CONNECTION WITH EMPLOYMENT.—The deductions allowed by section 23 which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee;

(3) REIMBURSED EXPENSES IN CONNECTION WITH EMPLOYMENT.—The deductions allowed by section 23 (other than expenses of travel, meals, and lodging while away from home) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer;

expended on the daily trips between the leases, the twice-weekly trips to Kilgore, the monthly trips to Greggton, and the miscellaneous travel not otherwise identified. However, we are of the opinion that petitioner's monthly round trip to Shreveport was travel "away from home," and since it was incurred in connection with the performance of his employment, in the nature of an extra service attached thereto and not an inherent part thereof, its cost constitutes a deductible expense under section 22 (n) (2). *Kenneth Waters*, 12 T.C. 414 (1949).

Respondent attempts to distinguish our holding in *Kenneth Waters, supra,* on the ground "that because of the unusual circumstances * * * [there] * * * and the fact that such travel was not in the ordinary course of employment as anticipated at the outset of employment, the deduction was properly permitted," whereas here "from the outset * * * petitioner knew he would have to travel to Shreveport to report to Mr. Tarver once a month." We do not believe the distinction is valid. Our principal concern in *Waters* was with the Commissioner's position that the taxpayer, in order to deduct travel expenses while away from home, must be gone overnight. Rejecting that argument, we proceeded to say:

It is to be noted in the case at bar that the petitioner's employment was not inherently one that entailed traveling away from his home town and returning on the same day, such as might be the condition with a trucker, a bus driver or an employee on a short run of a railroad. In the case at bar the trips were in the nature of extra services attached to the petitioner's employment and not an inherent part of his work as a store manager. His travel took place on Sunday and was largely brought about by the war emergency. * * *

By this language we in no way limited the allowable deduction to expenses of travel of an extraordinary nature, rather we indicated that, in addition to being away from his business home, Waters was traveling *in connection with* the performance of his services as an employee and not *solely in the performance of* such services. See also *Irene L. Bell*, 13 T.C. 344 (1949).

The record is silent as to the amount expended by petitioner in making the Shreveport trips. However, on brief, respondent makes the following statement:

The petitioners' return shows that 25,000 miles were traveled for all purposes during 1953 and a total automobile expense of $1,705.75 was claimed. Applying mathematical computation to the above figures, the petitioners claimed $0.06823 per mile for travel expense.

Since respondent does not take issue with the use of this mileage expense factor, and petitioners have not established a greater one, we have utilized it in computing the amount which we have found petitioner expended on his Shreveport trips during the taxable year in issue, and based on mileage of 2,016, have found that petitioner ex-

pended a total of $137.55 in traveling to Shreveport during 1953. This amount is deductible.

No deduction is allowable with respect to the amounts expended by petitioner on his own meals while in Shreveport, the expense being purely personal in nature. *Fred Marion Osteen*, 14 T.C. 1261 (1950). The remainder of the amount claimed as a deduction for meals allegedly represents the amount expended by petitioner for the meals of business acquaintances in Shreveport. No attempt to substantiate this expenditure has been made, and its connection with his employment has not been established. Accordingly, respondent's disallowance is sustained.

Apparently petitioners contend they are entitled to deduct the amounts expended by Joseph in traveling to and from his employment at the Arkansas Fuel Oil Corporation plant. This expense was nothing more than the cost of commuting, a personal expense, and therefore is not deductible.

The last item for consideration is the amount of $75 allegedly expended for work clothes. There is no provision in the statute allowing the deduction of cost of work clothes in computing adjusted gross income unless the taxpayer is reimbursed therefor by his employer. Accordingly, petitioners' claim for the deduction is denied.

*Decision will be entered under Rule 50.*