ALLAN L. HANSON AND FLORENCE S. HANSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78221. Filed December 12, 1960.

*Peter W. Janss, Esq.*, for the petitioners.
*Arthur B. Bleecher, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in the petitioners' Federal income tax for the years 1954 and 1956 in the amounts of $206.06 and $266.48, respectively.

The issues are:

(1) Whether the amount of $444.24 incurred by petitioner Allan L. Hanson in 1954 for meals on business trips which did not require absence from home overnight is deductible as a trade or business expense; and

(2) Whether the reimbursement by the Hanson Construction Company to petitioner Allan L. Hanson in 1956 of $456.74, incurred by him for meals on business trips which were not overnight, is includible in petitioners' gross income and not deductible as a reimbursed trade or business expense.

FINDINGS OF FACT.

Allan L. Hanson and Florence S. Hanson, husband and wife, are residents of Washington, Iowa. They filed joint Federal income tax returns for the years 1954 and 1956 with the district director of in-

ternal revenue for the district of Iowa. Allan will hereinafter be called the petitioner.

Petitioner was engaged in the business of a construction contractor in 1954 as a sole proprietor under the name Hanson Construction Company, doing principally culvert work, bridge work, and paving and concrete work of all kinds. In 1956 petitioner was engaged in the same kind of work and in that year he elected to have his business enterprise, the Hanson Construction Company, taxed as a corporation pursuant to section 1361 of the Internal Revenue Code of 1954.[1]

During the years in question petitioner constructed culverts and bridges in some 15 Iowa counties. His home and his office and his shop buildings were all located in Washington, Iowa, and the jobsites where the culverts and bridges were erected were mostly within a range of 6 to 80 miles from Washington, Iowa, with an occasional job at distances greater than 100 miles away.

The office and carpenter and repair shops are located on 12 acres of land in Washington. His equipment includes trucks, draglines, concrete mixers, water pumps, and a powersaw. Almost all of the forms for the concrete work are made in the Washington shop, and then trucked out to the various jobs. Usually there was a stock of one to three carloads of lumber and plywood kept at the Washington plant for use in making forms. All of the equipment repair work was performed in the Washington repair shop which was under the supervision of a heavy-duty mechanic.

Petitioner, as sole executive of the business, maintained close personal supervision over every phase of the business. He made the purchases, made up the bids, estimates, and quotations for the various jobs, supervised the work of the mechanics and carpenters in Washington, and traveled extensively to each of the jobs to supervise and aid the job foreman or job supervisor in the performance of the various jobs. Petitioner's wife handled the mail, kept the books, made up the payroll, and took care of telephone calls. She relayed petitioner's instructions to various employees. When petitioner was on trips to jobsites he would telephone his office once and sometimes twice a day. Petitioner's trips to jobsites usually started early in the morning after he had first gone to his office and his shops where all work was under his direct supervision. All of petitioner's trips to jobsites would be by automobile. At the jobsites he would confer with his job foremen or job supervisors over the progress of the work, give orders with respect to the work, confer with county engineers and other officials in connection with the projects, and sometimes he would arrange for delivery of necessary supplies. On some of the

---

[1] All section references are to the Internal Revenue Code of 1954, as amended.

trips he was able to return to Washington the same day, often by driving late at night. On others he was not. Sometimes his plans would be changed by what developed at the jobsite or his plans to return would be changed en route when, by calls to his office, he would learn he would be needed at another jobsite. He almost always carried sleeping clothes and toilet articles in his car when he left on these trips.

Petitioner claimed a deduction for "Travel Expense" in the amount of $1,378.78 in the joint return filed for 1954. Respondent disallowed $444.24, with the explanation that it represented "Expense of meals incurred on trips not requiring absence from home over night." It is stipulated said sum represents such meal expense.

As stated, in 1956 the petitioner elected to have his sole proprietorship taxed as a corporation. On the corporate income tax return a deduction was claimed for "Travel" in the amount of $1,800. Included in the expense deduction claimed by the Hanson Construction Company in the corporate return is the amount of $456.74 which, it is stipulated, represents the petitioner's meal expense on trips not requiring his absence from home overnight. This amount of $456.74 was reimbursed to the petitioner by the Hanson Construction Company. The reimbursement was not included in the petitioner's gross income in the joint return for 1956. Petitioner did not claim a deduction for this amount in the joint return for 1956.

Respondent, in the notice of deficiency, disallowed business expenses in 1956 in the amount of at least $456.74, with the explanation that these represented "Expense of meals incurred on trips not requiring absence from home over night." In an amendment to his answer the respondent then alleged, in part, as follows:

(i) That the amount of $456.74 expended by petitioner Allan L. Hanson for meals eaten in 1956 on trips not requiring absence from home overnight is not an allowable deduction in computing petitioner's taxable income for 1956.

(j) That the reimbursement of $456.74 constitutes income taxable to petitioners in the taxable year 1956.

OPINION.

Section 162(a)(2), I.R.C. 1954, allows a deduction for "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business." Respondent allowed all of petitioner's expenses for trips with the exception of petitioner's meal expense on just those days where petitioner would leave his home in Washington, Iowa, in the morning and return home the same day. The disallowed expenditures were for meals consumed at various towns in Iowa while petitioner was traveling on trips to various jobsites, but it is respondent's position

that, because the trips were only of 1-day duration, the meal expense is not an allowable deduction under section 162 and that such expense constitutes nondeductible living expenses under section 262. The latter section provides, in part: "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

Respondent has long applied what petitioner calls the "overnight rule" as the test for the deductibility of a taxpayer's meal expenses on his business trips. This means generally he allows the meal expense for the entire trip as travel expenses if the trip involved the taxpayer staying away from home overnight and disallows meal expenses if the taxpayer left his home and returned the same day. There is no specific regulation with respect to the overnight rule but various rulings of the Commissioner show its consistent application.[2] Respondent's application of the overnight rule as a test for the allowability of meal expenses has been upheld in many decisions of this Court. See *Fred Marion Osteen*, 14 T.C. 1261; *Sam J. Herrin*, 28 T.C. 1303; *Al J. Smith*, 33 T.C. 861.

In *Joseph M. Winn*, 32 T.C. 220, taxpayer, an oil company employee, made a monthly 1-day round trip from his home in Texas to Shreveport, Louisiana, a distance of 84 miles, in order to report to his employer. We held the monthly trip was travel away from home within the meaning of the statute and its cost constituted a deductible expense. However, we held the cost of the midday meal he ate in Shreveport on each trip was not deductible, saying:

> No deduction is allowable with respect to the amounts expended by petitioner on his own meals while in Shreveport, the expense being purely personal in nature. * * *

In *Al J. Smith, supra*, the taxpayer was a food broker traveling the State of Mississippi. With respect to his claim for deductions for meals for his 1-day trips we said:

> The evidence is clear, and the petitioner admits that these meals were consumed by him on trips he made when he did not spend the nights away from home. The cost of these meals were not expenses incurred while "away from home" within the meaning of the statute [sec. 162]. They were personal expenses, which are not deductible, and the deduction claimed is disallowed. * * *

Petitioner points to the factual difference between the instant case and some of the cases where we have upheld the overnight rule as a test for deductibility of meal expenses. The difference is a factual immateriality. It is obvious the rule presents a fairly rigid test where meal expenses will or will not be deductible, depending upon whether the trip was an overnight or a 1-day trip.

---

[2] Rev. Rul. 54–497, 1954–2 C.B. 75; Rev. Rul. 56–508, 1956–2 C.B. 126.

The main thrust of petitioner's argument is that the overnight rule is wrong; that it is arbitrary and not sanctioned by section 162. It is obvious the overnight rule is born of an interpretation of section 162(a)(2) as granting an inseparable expense item which would allow meal expense when both meals and lodging would be secured.[3] This interpretation seems justified for the statute is only dealing with expenses "while away from home." A lodger is one who, for the time being, is lodged away from home. One who completes a business trip in one day is not "away from home" within the meaning of this statute. He incurs meal expenses on such a day the same as he does on a day he takes no trip. But on both days the meal expenses were personal expenses for they were incurred while he was lodged in his own home. We are of the opinion that respondent correctly interprets section 162(a)(2) as granting no more than meal expenses in connection with business trips that involve lodging away from home.

In 1956, when petitioner elected to have his company taxed as a corporation, he was reimbursed for meal expenses in the stipulated amount of $456.74 for meals consumed on trips where he left Washington and returned the same day. Here the issue is whether the stipulated sum should be included in his income for 1956. It is clear from the record that the reimbursement for meals was compensatory in nature and includible in gross income. Sec. 61(a)(1); see *Walter I. Geer*, 28 T.C. 994; *Ollie V. Kessler*, 39 B.T.A. 646. Although the petitioner in his brief seems to argue that both section 62(2)(A) and (B) apply here, it is evident that only 62(2)(A), which deals with reimbursed expenses of an employee, is applicable. Section 62(2)(A) allows the petitioner to deduct from his gross income only those deductions permitted by section 162(a)(2). Therefore, our discussion above to the effect that cost of petitioner's meals was personal in nature and nondeductible is equally applicable here.

We hold that the cost of meals incurred by petitioner in 1954 on business trips which were not overnight is not a deductible expense under section 162(a)(2) for that year. We hold further that the reimbursed amounts for meals incurred by petitioner in 1956 on similar business trips is includible in his gross income for that year and is not a deductible expense. Secs. 61(a)(1) and 62(2)(A).

*Decision will be entered for the respondent.*

---

[3] In *Wofford* v. *Hooper*, 149 Tenn. 250, 259 S.W. 549, the court had a somewhat similar phrase, "board and lodging," to interpret and the court first observed, "Quite commonly the expression 'board and lodging' is used when both are furnished * * *."