Allan L. HANSON and Florence S. Hanson, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16769.

United States Court of Appeals Eighth Circuit.

Jan. 16, 1962.

Peter W. Janss, Des Moines, Iowa, for petitioner.

Edward L. Rogers, Attorney, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, and Robert N. Anderson, Attorneys, Department of Justice, Washington, D. C., on the brief, for respondent.

Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

VOGEL, Circuit Judge.

This case is here on a petition for review of the Tax Court's determination that petitioners, Allan L. Hanson and Florence S. Hanson, husband and wife filing jointly, had a deficiency in their federal income tax returns for the tax years 1954 and 1956 in the respective amounts of $206.06 and $266.48.

The Hansons are residents of Washington, Iowa. (Allan L. Hanson will hereafter be referred to as petitioner.) In 1954 petitioner was engaged in the business of a construction contractor, as a sole proprietor under the name of Hanson Construction Company, doing principally culvert, bridge, paving and concrete work of all kinds. In 1956, petitioner was engaged in the same kind of work, and in that year he elected to have his business enterprise taxed as a corporation pursuant to § 1361 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 1361).

Petitioner's home, office and shop buildings and equipment were all located in Washington, Iowa. Almost all of the forms for the concrete work were made in the Washington shop, and then trucked out to the various jobs. All of the equipment repair work was performed in the Washington repair shop, which was under the supervision of a heavy duty mechanic.

Petitioner, as sole executive, maintained close personal supervision over every phase of the business. He made the purchases, made up the bids, estimates and quotations for the various jobs, supervised the work of the mechanics and carpenters in Washington and traveled extensively to each of the jobs to supervise and aid the local foreman or supervisor in the performance of the work. Petitioner's wife handled the mail, kept the books, made up the payroll and took care of telephone calls. She relayed petitioner's instructions to various employees. When petitioner was on trips to job sites he would telephone his office once and sometimes twice a day.

Petitioner's trips to job sites usually started early in the morning after he had first gone to his office and his shops. At the job sites he would confer with his job foreman or job supervisor over the progress of the work and give orders with respect thereto. These conferences were often held during the course of meals. He would confer with county engineers and other officials in connection with the projects and sometimes would arrange for delivery of necessary supplies.

On some of his trips he was able to return to Washington the same day, on occasion late at night. Some of these return trips home were occasioned by the exigencies of his business, rather than the comfort of his bed; that is, he testified that he would have preferred to stay at the job site rather than to return home that evening. Sometimes his plans would be changed by what developed at the job site or his plans to return would be changed en route when, by calls to his office, he would learn that he would be needed at another site. He almost always carried sleeping clothes and toilet articles in his car when he left on trips.

It is not disputed that the trips in question were all made in connection with petitioner's business and that they were all made to areas away from the City of Washington, Iowa, his place of residence and business home.

Petitioner deducted money expended for meals purchased on the aforementioned trips from his 1954 gross income. For the year 1956, after petitioner's election under § 1361, money expended for meals was reimbursed to the taxpayer by the business. The government has allowed as a deduction the transportation expenses incurred on all trips, and has also allowed deductions for all meals and lodging on trips when petitioner was gone overnight. It contended, however, that where petitioner was on trips which did not involve his remaining overnight, the expense of meals during such trips was not an allowable deduction for the year 1954, and that reimbursements made for similar meal expenses in 1956 constituted taxable income to petitioner.

The sole question for determination is whether the cost of meals is a deductible expense when such expense is incurred during trips on which the taxpayer, in a situation such as that presented here, was not absent from his home overnight.

The pertinent statutes from the Internal Revenue Code 1954 (26 U.S.C.A. §§ 1 et seq.) are as follows:

"§ 62. *Adjusted gross income defined*

"For purposes of this subtitle, the term 'adjusted gross income' means, in the case of an individual, gross income minus the following deductions:

"*(1) Trade and business deductions.*—The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.

"*(2) Trade and business deductions of employees.*—

"*(A) Reimbursed expenses.*—The deductions allowed by part VI (sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer.

"*(B) Expenses for travel away from home.*—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

"*(C) Transportation expenses.*—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee."

"§ 162. *Trade or business expenses*

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \*

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *."

"§ 262. Personal, living, and family expenses

"Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

■ The Tax Court, in holding with the Commissioner, stated, 35 T.C. 413 (December 12, 1960):

"Respondent has long applied what petitioner calls the 'overnight rule' as the test for the deductibility of a taxpayer's meal expenses on his business trips. This means generally he allows the meal expense for the entire trip as travel expenses if the trip involved the taxpayer staying away from home overnight and disallows meal expenses if the taxpayer left his home and returned the same day. *There is no specific regulation with respect to the overnight rule but various rulings of the Commissioner show its consistent application.* Respondent's application of the overnight rule as a test for the allowability of meal expenses has been upheld in many decisions of this Court. See Fred Marion Osteen, 14 T.C. 1261; Sam J. Herrin, 28 T.C. 1303; Al J. Smith, 33 T.C. 861." (Emphasis supplied.)

After discussing the cases cited, the court continued:

"* * * It is obvious the rule presents a fairly rigid test where meal expenses will or will not be deductible, depending upon whether the trip was an overnight or a 1-day trip.

"The main thrust of petitioner's argument is that the overnight rule is wrong; that it is arbitrary and not sanctioned by section 162. It is obvious the overnight rule is born of an interpretation of section 162 (a) (2) as granting an inseparable expense item which would allow meal expense when both meals and lodging would be secured. This interpretation seems justified for the statute is only dealing with expenses 'while away from home'. A lodger is one who, for the time being, is lodged away from home. One who completes a business trip in one day is not 'away from home' within the meaning of this statute. He incurs meal expenses on such a day the same as he does on a day he takes no trip. But on both days the meal expenses were personal expenses for they were incurred while he was lodged in his own home. We are of the opinion that respondent correctly interprets section 162(a) (2) as granting no more than meal expenses in connection with business trips that involve lodging away from home."

There is no question but that the expense of meals here is not deductible unless incurred "while away from home". The issue, then, resolves itself into what constitutes "away from home" insofar as meal expense is concerned.

It should be noted that neither in the Code nor accompanying regulations pertinent to this case is there found the word "overnight" limiting the phrase "while away from home".[1]

1. We note regulations §§ 1.162–17(b) (3) (ii), 1.162–17(b) (4) and 1.162–17(c) (2), adopted in 1958 and applicable for tax years beginning after December 31, 1957. § 1.162–17(e). These regulations for the first time used the word "overnight"—"* * * transportation, meals and lodging while away from home *overnight,* entertainment expenses, and other business expenses." (Emphasis supplied.) Even if the addition of the word "overnight" in the regulations could be considered not to be an arbitrary qualification unwarranted by the statutory language of the Code (cf. Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 1936, 297 U.S. 122, 134, 56 S.Ct. 397, 80 L.Ed. 528; Land O'Lakes Creameries, Inc. v. Commodity Credit Corp., 8 Cir., 1959, 265 F.2d 163,

Judge Wisdom, in considering the question in Williams v. Patterson, 5 Cir., 1961, 286 F.2d 333, 335–336, stated:

"We note, first, that Congress expressly repudiated a narrow view of the deduction. The Act allows the full amount expended to be deductible, not just the excess of expenditures over the amounts that would ordinarily be spent at home. Moreover, there is no express statutory limitation, even as to reasonableness. Second, we note particularly that there is no language in the statute limiting its application to 'expenses incurred while * * * away from home *overnight*'. The 'overnight' gloss was dreamed up by the Department. Third, there is nothing in the statute indicating any congressional intent that 'away from home' means either overnight or away from home for a period substantially longer than an ordinary working day, or that it means 'a trip on which the taxpayer's duties [in his released time] required him to obtain necessary sleep away from his home terminal'."

The so-called overnight rule has been adopted by the Commissioner (Rev.Rul. 54–497, CB 1954–2, 75); by the Tax Court clearly in at least one case (Al J. Smith, 1960, 33 T.C. 861) and in at least two other cases that were interpreted by the Tax Court here as adopting that rule (Sam J. Herrin, 1957, 28 T.C. 1303; Fred Marion Osteen, 1950, 14 T.C. 1261).[2]

On the other hand, the Tax Court has, in dealing with purely travel expenses

prior to the 1954 amendment (§ 62(2)(C) made such rule unnecessary as to transportation expenses for employees) expressly rejected the overnight rule in Kenneth Waters, 1949, 12 T.C. 414, 417:

"* * * There is no connotation that the trip must be an overnight one, nor do we think Congress intended such a connotation."

In accord are Frank N. Smith, 1954, 21 T.C. 991, 994; Horace E. Podems, 1955, 24 T.C. 21, 23; Joseph M. Winn, 1959, 32 T.C. 220. In Winn the court, in rejecting the overnight rule with regard to travel expenses (it was there dealing with the taxable year of 1953) stated, as to the question of deductibility of the cost of meals:

"No deduction is allowable with respect to the amounts expended by petitioner on his own meals while in Shreveport, the expense being purely personal in nature. Fred Marion Osteen, 14 T.C. 1261 (1950)." 32 T.C. at 225.

The overnight test has also been rejected by the First Circuit in Chandler v. Commissioner, 1955, 226 F.2d 467, 470 (involving only travel expenses); by the Fifth Circuit in Williams v. Patterson, supra, 286 F.2d at 335 (involving lodging, meals and tips); and by the Minnesota District Court in Scott v. Kelm, D. C.Minn., 1953, 110 F.Supp. 819, 821–822 (involving "automobile and travel expenses".)

In lieu of the overnight test sought here by the Commissioner, courts have applied many other tests in determining when a taxpayer is traveling "while away from home".[3]

165–166; Woods v. Benson Hotel Corp., 8 Cir., 1949, 177 F.2d 543, 547) it concededly could not be applicable here for we are concerned with the tax years 1954 and 1956.

2. In the latter two opinions the Tax Court did not use the word "overnight". In Osteen, the court based its determination on the fact that the postal clerk there involved was gone only six hours daily and thus his work day was "perhaps shorter than the work day for the ordi-

nary worker". In Herrin, the court said: "* * * The distinguishing factor * * * has been whether or not the nature of the employment requires that the employee be released from work to obtain necessary sleep or rest prior to the completion of the journey." 28 T.C. at 1305.

3. Examples of these tests are: The "distance test" (Amoroso v. Commissioner of Internal Revenue, 1 Cir., 1952, 193 F. 2d 583, 585, certiorari denied 343 U.S.

In the instant case the Tax Court, in accordance with Winn, supra, classified the expense of meals on non-overnight trips "personal in nature" and therefore non-deductible. The Commissioner, in urging affirmance of this holding, contends that to allow the deductions would

> " * * * either give the taxpayer in the instant case and others similarly situated a grossly unfair advantage over other taxpayers who, because of their jobs, must eat their meals away from their residence, or would mark the beginning of a trend where almost all such taxpayers last mentioned would be entitled to a deduction for their meals, a personal expense, to the detriment of the revenues."

The Commissioner does concede, of course, that if the taxpayer were traveling while away from home the expense of meals would be deductible from gross income. He then contends that:

> " * * * the fundamental test for determining whether the taxpayer incurred the meal expenses 'while away from home' has been whether or not his business travel was of such nature that it required him to seek lodging or at least sufficient time to sleep or rest." (Citations omitted.)

Thus, the Commissioner's argument, and the Tax Court's holding, is that if a taxpayer is to take a two-day trip, the expense for meals is non-personal and deductible, but if he leaves in the morning and returns home that same evening, the expense for meals then is personal and non-deductible.

Although discussing *travel* expenses while away from home (prior to the adoption of the 1954 Code), the words of the Tax Court in Waters seem peculiarly fitting to the present situation:

> " 'Travel * * * while away from home' in its 'plain, ordinary and popular' sense means precisely what it says. It means travel while away from one's home. There is no connotation that the trip must be an overnight one, nor do we think Congress intended such a connotation. Surely it would be absurd to say that an employee who flies from Boston to Washington on business and returns to Boston the same day is not entitled to the deduction, but that if he takes two days for the whole trip, he is entitled to the deduction." 12 T.C. at 416–417.

The same reasoning is equally applicable to the meals the employee eats in Washington on the two hypothetical trips, one of a single day's duration and the other of two. We fail to see reason or justification for the Commissioner's claim that the meals on a two-day trip are non-personal and deductible, while those on a one-day trip are personal and non-deductible, when such claim is based on whether an overnight trip was involved (or if there was at least a need for rest). The answer to the Commissioner's argument that the taxpayer here will be given "a grossly unfair advantage" over other taxpayers is that the difference in tax treatment between those who are "away from home" and those who are not is the legislative mandate that the former may deduct the price of meals from gross income and the latter may not. When the

---

926, 72 S.Ct. 759, 96 L.Ed. 1337; cf. Chandler v. Commissioner of Internal Revenue, supra, 226 F.2d at 470); the "widely separated locations" test, applicable only where the taxpayer has two places of business (id. at 469); the "need for rest" test (Williams v. Patterson, supra, 286 F.2d at 340; Sam J. Herrin, supra, 28 T.C. at 1305; see also David G. Anderson, 1952, 18 T.C. 649, 653); the "clear words of the statute" test

(Scott v. Kelm, supra, 110 F.Supp. at 822; Kenneth Waters, supra, 12 T.C. at 416–417); the "travel away from tax home" test (Horace E. Podems, supra, 24 T.C. at 23); the "daily routine" test (Charles H. Hyslope, 1953, 21 T.C. 131, 134); and the " 'traveling *in connection with* the performance of his services as an employee and not *solely in the performance* of such services' " test (Joseph M. Winn, supra, 32 T.C. at 224).

determination, made upon the entire record, is that the taxpayer was "away from home", the direction of the statute must be adhered to, albeit the expense is "personal in nature".

The further reasoning of the Tax Court that meals and lodging are interdependent because the statute reads "away from home" and a "lodger is one who for the time being, is lodged away from home" fails to convince and also is without basis in the Act. Although the punctuation in § 162(a) (2) might be interpreted as making meals and lodging interdependent—"traveling expenses (including the entire amount expended for meals and lodging) while away from home * * *"—the punctuation in § 62 (2) (B), which specifically refers to § 162, allows a contrary interpretation. It there reads, "travel, meals, and lodging". We find no statutory-based inseparability between meals and lodging.

That the problem presents difficulty is obvious from the lack of uniform holdings and the failure to have evolved a rule which would be a satisfactory guide in all situations. Merit is found in some of the tests referred to when applied to their peculiar fact situations, which brings us to that rather unsatisfactory conclusion that these cases must be decided according to their own sets of facts. We must, however, concur with the Fifth Circuit in Williams that the "overnight" rule is merely an arbitrary line-drawing, having no basis in the statute (286 F.2d at 335) and with the First Circuit, in Chandler, that it is " * * * more in the nature of legislation than interpretation and accordingly go[es] beyond the rule-making power of the Internal Revenue Service." 226 F.2d at 470.

■ For tax purposes, the petitioner's home was Washington, Iowa. Any travel on business away from the area of Washington, Iowa, was travel away from home within the meaning of the statute, whether such travel involved remaining overnight or not. The Tax Court's finding that under the undisputed facts herein the petitioner was not

"away from home" was clearly erroneous. We hold that, herein, petitioner was entitled to deduct the claimed meal expense during the year 1954 and that his having been reimbursed for meal expense during the year 1956 was not taxable income to him.

Reversed.