FRED G. ARMSTRONG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 95014, 95015.   Filed March 2, 1965.

*John Marriott Kline,* for the petitioner.
*Walter John Howard, Jr.,* for the respondent.

#### OPINION

FAY, *Judge:* The Commissioner determined deficiencies in petitioner's income taxes, as follows:

| Docket No. | Taxable year ended | Amount |
| --- | --- | --- |
| 95014 | Dec. 31, 1960 | $643.42 |
| 95015 | Dec. 31, 1958 | 391.43 |
|       | Dec. 31, 1959 | 401.48 |

By an amendment to the answer in docket No. 95014, the Commissioner made claim for an increased deficiency in the amount of $219.81. The parties have reached agreement as to the disposition of all issues in this proceeding except one. The remaining issue for decision is whether the costs of meals incurred by petitioner, a railroad brakeman, while on his normal tour of duty are deductible under the provisions of sections 62(2)(B) and 162(a)(2), I.R.C. 1954.

All of the facts have been stipulated, are so found, and the stipulation of facts, together with the exhibits attached thereto, is incorpo-

rated herein by this reference. Those facts necessary to an understanding of our inquiry are recited below.

Petitioner, who resides in Glasgow, Mont., filed his Federal income tax returns for the years in issue with the district director of internal revenue at Helena, Mont. Petitioner was employed by the Great Northern Railroad (hereinafter referred to as the railroad) as a brakeman during the years herein involved. Most of petitioner's trips as brakeman for the railroad were turnaround runs on a local work train which headed east out of the freight division point of Glasgow, Mont., to Wolf Point, Brockton, Bainville, and other intermediate points and returned back to the Glasgow terminal. These turnaround runs covered approximately 250 miles and each run took petitioner away from his home terminal of Glasgow from 10 to 16 hours, or on an average of 13 hours a day. Under the provisions of the work rules of the railroad, petitioner was not allowed to be on duty over 16 hours on these trips. When the local train did not return to Glasgow within the 16 hours due to delays, the railroad relieved the train crew by another train crew which brought the train into Glasgow.[1] On all of these trips the railroad allowed two stops a day, of 30 minutes each, for meals. Petitioner did not take lunches with him, but purchased his meals in restaurants during these 30-minute stops. The railroad did not reimburse petitioner for the cost of his meals. The parties agree that the costs of the meals in question were $470.10 in 1958, $706.14 in 1959, and $687.25 in 1960.

Petitioner deducted the costs of his meals from gross income in his computations of adjusted gross income. Respondent, in his notices of deficiency, disallowed these deductions.

Petitioner maintains that the costs of his meals were incurred while he was "traveling away from home" and as such are properly deductible under sections 62(2)(B) and 162(a)(2). He further maintains that the respondent has disallowed the deduction because the expenses were incurred while petitioner was not away from home "overnight." It is petitioner's contention that there is no justification in the statute for the respondent's adding the requirement that before costs of meals can be deducted as traveling expenses the petitioner must be away from home overnight. He relies heavily on *Hanson* v. *Commissioner*, 298 F. 2d 391 (C.A. 8, 1962), reversing 35 T.C. 413 (1960).

Respondent, on the other hand, contends that before the costs of meals can be deducted as part of traveling expenses, the petitioner must remain away from his home terminal "overnight" or for at least such duration that he cannot reasonably be expected to leave from and return to his home terminal without being released from duty

---

[1] Where this occurred, petitioner would obtain lodging for the night. Respondent has allowed the petitioner to deduct the costs of meals and lodging on these occasions.

for sufficient time to obtain sleep or rest elsewhere. It is respondent's position that petitioner does not meet either of these tests and, accordingly, the costs of the meals are nondeductible personal expenses under section 262 of the Internal Revenue Code of 1954.

We sustain respondent's determination. We do not reach the question concerning the validity of the "overnight" requirement and therefore *Hanson* does not apply.

We think this case is controlled by our decisions in *Fred Marion Osteen*, 14 T.C. 1261 (1950), and *Sam J. Herrin*, 28 T.C. 1303 (1957). In the *Osteen* case we stated:

The petitioner was in no essentially different position from the worker who is unable to have one of his meals at home. His regular day's work, though it took him away from his home town, was less than seven hours, perhaps shorter than the work day for the ordinary worker. During that time he had a regular meal. Had he worked and had the meal in a restaurant in Greenville there could be no doubt that the expense would be personal. The fact that the meal was eaten at Charlotte offers no material difference. * * *

We recognize that there are factual differences between the *Osteen* case and the instant case. However, these differences are very similar to those we discussed in the *Herrin* case, wherein we stated:

The only factual differences between the instant case and *Fred Marion Osteen*, *supra*, are (1) petitioner's regular working day encompasses 14 hours, (2) petitioner eats all three meals during working hours, (3) the round trip distance is 346 miles, and (4) petitioner here is a truck driver. No one of these differences is material.

The "travel" performed by petitioner was part of his everyday employment. His daily routine included the reporting to his home terminal in the morning. There he would board the work train and commence the performance of his duties as a brakeman. At this point he was in no different position than the average white-collar worker who reports to his desk each morning to start performing his duties. It just happens that while petitioner was performing his daily duties the train was moving and covered a distance of 250 miles during a period of 10 to 16 hours. In contrast, the place where the white-collar worker performed his daily duties remained stationary. We are of the opinion that the mere movement of the place where petitioner performs his routine duties does not place him in a travel status as we feel is required by section 162(a)(2). Cf. *Louis Drill*, 8 T.C. 902, 903 (1947); [2] *Joseph M. Winn*, 32 T.C. 220, 224 (1959); and *Charles H. Hyslope*, 21 T.C. 131, 134 (1953). To allow the deduction here would be to discriminate against those employees whose routine employment is stationary by giving mobile employees (those whose employment by its

[2] In *Louis Drill*, 8 T.C. 902, 903 (1947), we stated:

It is only in connection with travel expenses that the statute makes specific provision for the deduction of the cost of meals. We do not understand petitioner to contend that he was on a travel status on the nights he worked overtime * * *

736

nature requires constant motion, i.e., busdrivers, truckdrivers, train-conductors, airline pilots) a deduction, a result we believe was not contemplated by the statute or by Congress. Cf. *Kenneth Waters*, 12 T.C. 414, 417 (1949); and *Williams* v. *Patterson*, 286 F. 2d 333, 337 (C.A. 5, 1961). In *Williams* v. *Patterson, supra,* the Fifth Circuit, in discussing the *Osteen* case, stated:

> The Tax Court, properly, we think, denied Osteen a deduction for meals at Charlotte.[10]

[10] To have allowed Osteen a deduction for his meals would have discriminated against those who do not work in a mobile office. * * *

In view of our holding, it is not necessary for us to reach the question as to whether the deduction should be denied for the added reason that petitioner was not away from home "overnight."

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

Scott, *J.*, concurs in the result.