ADOLPH J. THOMA and EVELYN H. THOMA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thoma v. Commissioner
Docket No. 28925-81.
United States Tax Court
T.C. Memo 1983-623; 1983 Tax Ct. Memo LEXIS 165; 47 T.C.M. (CCH) 6; T.C.M. (RIA) 83623; October 6, 1983. Stuart R. Schroeder, for petitioners. James M. Klein, for respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $419 and $547 in petitioners' Federal income taxes for 1977 and 1978, respectively. After concessions by petitioners, the issue remaining for our determination is whether amounts expended by petitioners for meals and lodging are deductible under section 162(a)(2) [1] as travel expenses, specifically, whether *166 those expenses were incurred in the pursuit of business away from petitioner Adolph J. Thoma's tax home. FINDINGS OF FACT This case was stipulated in part, and the stipulations of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Adolph J. Thoma (petitioner) and Evelyn H. Thoma are husband and wife. During the years in issue they resided 50 miles from Milwaukee in Helenville, Wisconsin, on the 80-acre farm that has been petitioner's home since birth. Petitioners timely filed joint Federal income tax returns for 1977 and 1978 with the Internal Revenue Service Center in Kansas City, Missouri. Prior to and during the years in issue, petitioner had a contract with the United States Postal Service for the delivery of mail to various post offices 6 days a week, excluding Sundays and Federal holidays. The contract contemplated a total operational cost of 28 cents per mile. Under his agreement with the Postal Service, petitioner was required to pick up mail by 5:00 a.m. at the Milwaukee *167 Post Office, which is a sectional center, and distribute it to seven small post offices west of Milwaukee by 7:30 a.m. The final stop was at the postal terminal in Johnson Creek, Wisconsin, which is approximately 50 miles from Milwaukee. The sequence was reversed in the afternoon; petitioner collected the mail from the seven terminals and delivered it to the Milwaukee sectional center, beginning at 5:00 p.m. and completing the trip by 7:30 p.m. In addition to his postal activities, petitioner conducted various activities in Helenville. He had operated a saw mill business on his farm since 1955, but that business was significantly diminished in scale after 1969, when petitioner suffered a heart attack, and he did not report any income from this activity in either 1977 or 1978. Petitioner also serviced and sold chain saws and sold lumber during the years in issue. By 1977, petitioner, who had previously farmed parts of the Helenville property, no longer cultivated his land but, instead, rented 65 acres to others to farm. In performance of his contract with the Postal Service, petitioner arrived at the Milwaukee Post Office at approximately 4:15 a.m. in order to load his truck *168 before beginning his route. After his delivery to Johnson Creek at 7:15 a.m., petitioner would go to his farm in Helenville to eat breakfast. He spent from 1/2 hour to an hour performing maintenance work on his mail delivery truck, from 2 to 4 hours per day working on his chain saw business, and an unspecified amount of time performing miscellaneous maintenance tasks on the land that was not rented to others. Petitioner also often took an hour nap during the day before resuming his carrier duties. At approximately 4:50 p.m., petitioner would go to Johnson Creek to begin the second portion of his postal route, which he completed in Milwaukee at approximately 7:15 p.m. He then spent about 15 minutes unloading his truck in Milwaukee. Petitioner rented an efficiency apartment in Milwaukee for $115 per month, and he would go there to eat and sleep after finishing at the post office. Petitioner's daily meal cost was $3, and his total per diem cost of staying in Milwaukee overnight was approximately $8. Petitioner found it necessary to stay in Milwaukee overnight in order to have enough time between the two parts of his route to sleep. (He usually slept from about 8:30 p.m. to 3: *169 30 a.m.) Because he did not have to be in Milwaukee to pick up mail on Sunday morning, petitioner would return to Helenville on Saturday night instead of staying in Milwaukee. On his income tax returns for 1977 and 1978, petitioner reported gross receipts and net profit or loss from his various income-producing activities in the following amounts: 1977
1978
Gross
Net Profit
Gross
Net Profit
Activity
Receipts
(or Loss)
Receipts
(or Loss)
Mail transportation
$24,842
$11,173 $24,571
$11,716 Chain saw
2,289
313 2,462
424 Land Rental
2,145
(977)
3,120
826 Farm Income
333
(4,733)
2,314
(3,499)
On the Schedules C attached to his returns that reported his mail carrier activities, petitioner deducted $1,580 and $1,380 for 1977 and 1978, respectively, attributable to rental expenses in Milwaukee. He also deducted $912 for meal expenses incurred in Milwaukee during each year. Respondent disallowed all of the meal expense deductions for both years and $1,448 and $1,265 for the rental expenses for 1977 and 1978, respectively, because respondent determined that these amounts were not expended while "away from home, *170 " as required by section 162. OPINION Section 262 provides: "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses." Personal, living, and family expenses include the cost of maintaining a household. Section 1.262-1(b)(3), Income Tax Regs. Respondent's position in this case is that the expenses in issue, i.e., the cost of petitioner's meals and lodging in Milwaukee, are within the purview of section 262 and, therefore, are nondeductible. Petitioner asserts that these expenses are deductible as "traveling expenses * * * [incurred] while away from home in the pursuant of a trade or business" under section 162(a)(2). The Supreme Court in Commissioner v. Flowers,326 U.S. 465 (1946), construed section 162(a)(2) to mean that a travel expense is deductible only if it is (1) reasonable and necessary, (2) incurred while away from home, and (3) necessitated by the exigencies of business. Both parties in the instant case agree that the key issue for determination here is the location of petitioner's tax home. If petitioner's tax home is Helenville, Wisconsin--as petitioner claims--then the cost *171 of meals and lodging in Milwaukee may be deductible under section 162. But if respondent's determination that Milwaukee is petitioner's tax home is correct, then the disputed expenses of eating and residing in Milwaukee are "personal, living, and family expenses" and, hence, nondeductible under section 262. Petitioner has not claimed that any of his expenses in Helenville are deductible under section 162(a)(2) if Milwaukee is determined to be his tax home. "[This] Court has consistently defined the word 'home' as used in section 162 to refer to the vicinity of a taxpayer's principal place of employment and not the place where his personal residence is located, if different from the principal place of employment." Daly v. Commissioner,72 T.C. 190, 195 (1979), revd. 631 F.2d 351 (4th Cir. 1980), revd. en banc 662 F.2d 253 (4th Cir. 1981) (Tax Court decision affirmed). See also Folkman v. United States,615 F.2d 493, 495 (9th Cir. 1980); England v. United States,345 F.2d 414, 417 (7th Cir. 1965). The purpose of the "away from home" deduction is "to mitigate the burden of the taxpayer who, because *172 of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." See Kroll v. Commissioner, * * * [49 T.C. 557, 562 (1968)]. If an employee incurs duplicate living expenses, we must determine whether the duplication resulted from the needs of his employer's business, or from the employee's personal desire to maintain a residence in one area while working in another. [Daly,72 T.C. at 195.] Both parties refer us to the case of Markey v. Commissioner,490 F.2d 1249 (6th Cir. 1974), revg. a Memorandum Opinion of this Court, for guidance in determining petitioner's "principal place of employment." In Markey, the petitioner had two jobs that were located a considerable distance apart. He worked 5 days during the week at a job in Michigan, and 2 days each weekend in Ohio, where he maintained his personal residence. The taxpayer argued that living expenses incurred at the Michigan location were deductible because he was away from home while there. The Court of Appeals disagreed, stating: [W]hen a taxpayer has two places of business or employment at *173 a considerable distance from one another, his designation of one as his abode, if different from the place where he spends more of his time, engages in greater business activity, and derives a greater proportion of his income, is not dispositive of the question which location is his home for the purpose of deducting traveling expenses. [Markey v. Commissioner,490 F.2d 1249, 1255 (6th Cir. 1974)]
The criteria set forth in Markey for determining a petitioner's tax home have been adopted by this Court. See Gardin v. Commissioner,64 T.C. 1079 (1975); Montgomery v. Commissioner,64 T.C. 175 (1975), affd. 532 F.2d 1088 (6th Cir. 1976). Petitioner argues that, under the criteria of Markey,Helenville is his tax home and not Milwaukee.Petitioner spent only 1 hour per day actually in Milwaukee and 5 hours per day outside Milwaukee attending to his carrier business, but in comparing the relative amount of work time spent in each claimed tax home for the purpose of applying the first factor under Markey, we must count the time devoted to servicing the postal route as attributable to his Milwaukee business. *174 Although petitioner was moving from town to town in the performance of his duties, the "travel" performed by petitioner was part of his everyday Milwaukee employment and his movement from place to place was part of his required routine. See Armstrong v. Commissioner,43 T.C. 733 (1965); Osteen v. Commissioner,14 T.C. 1261 (1950). Petitioner claims on brief that the 8 to 8-1/2 hours he spent in Helenville between the two parts of his postal route were devoted to Helenville business, thus outweighing the amount of time spent on Milwaukee business, but this argument is not supported by his testimony at trial. For example, he testified that part of this time was spent eating breakfast and taking a nap. In addition, petitioner testified that he did miscellaneous maintenance work on the farm land that was not either rented to others or cultivated by him. None of this constitutes business activity, and it cannot be included when counting the hours in Helenville devoted to business. Petitioner testified that he was able to keep a well-equipped garage on his farm, which allowed him to perform maintenance work on his delivery truck himself. He spent *175 1/2 to 1 hour daily on this activity. In addition, he also spent 2 to 4 hours each day on his chain saw business. Petitioner did not cultivate his land in 1977 or 1978, and he made no showing that his land rental activities required his daily presence in Helenville. Petitioner has not shown that he devoted more than 5 hours per day to Helenville business. Petitioner's participation in his postal activities, however, occupied at least 5-1/2 hours per day, 6 days per week.Thus, petitioner spent more time on his Milwaukee business than on his Helenville business. The second factor mentioned in Markey also tends to show that Milwaukee was petitioner's tax home. Although at one time petitioner had several businesses in Helenville, viz., his farming activities, his saw mill operation, and his chain saw business, by 1977 his health had forced him to reduce greatly the scope of these activities. His postal delivery activities continued to require a substantial amount of time and effort. The greater degree of petitioner's business activity in Milwaukee, as compared with the degree of business activity in Helenville, negates petitioner's claim that Helenville was his tax home. *176 The final factor set forth in Markey is the relative significance of the financial return from each geographic area. In 1977, petitioner had over five times as much gross income from his contract with the United States Postal Service as from his chain saw, land rental, and farm activities combined. In 1978, petitioner's gross income from his postal route was more than three times his receipts from his Helenville businesses. Petitioner's Milwaukee business activities yielded a far more significant amount of net income than his Helenville activities. Thus, when we apply the test set forth in Markey to the facts herein, we are convinced that Milwaukee was petitioner's tax home. His cost of meals and lodging in Milwaukee are, therefore, not deductible. To be complete, we should note that petitioners argue that Mr. Thoma's decision to spend weeknights in Milwaukee was based on his need for rest and on sound economics, i.e., the cost of his meals and lodging was approximately $8 per day whereas the cost of returning to Helenville would have been approximately $28 per trip. Any decision to return to Helenville for the night would have been motivated by personal considerations, *177 and that cost would not be deductible. In any event, in determining whether travel expenses are deductible, the reasonableness of a taxpayer's decision as to his lifestyle is not controlling. See Kasun v. United States,671 F.2d 1059, 1061-1062 (7th Cir. 1982). Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩