JEROME MORTRUD AND LORRAINE MORTRUD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4848-62. Filed May 21, 1965.

*Gordon D. Simons*, for the petitioners.
*Sidney C. Freed*, for the respondent.

OPINION

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the calendar years 1959 and 1960 in the amounts of $190.31 and $222.56, respectively.

The only issues to be decided are (1) whether the cost of meals incurred by petitioner Jerome Mortrud during 1959 and 1960 in the amounts of $612.70 and $614.90, respectively, in the operation of his two wholesale dairy routes as an independent contractor are deductible under the provisions of sections 62(1) and 162(a) (2), I.R.C. 1954; and (2) whether the cost of certain clothing and the cleaning thereof in 1959 and 1960 in the total amounts of $47.53 and $71.65, respectively, in the operation of the same business, are deductible under the provisions of sections 62(1) and 162(a), of the same Code.

Other adjustments to income were made by the respondent for both years which are not in dispute.

The parties agree that the amount of the deduction for each of the years 1959 and 1960 for medical expenses is subject to recomputation under Rule 50 in a manner consistent with the provisions of section 213, I.R.C. 1954.

All of the facts have been stipulated except, in connection with issue 2, samples of the clothing there involved were received in evidence, in addition to the stipulation. No oral testimony was offered. The stipulation is incorporated herein by reference and summarized below under the respective issues.

*Issue 1*

Petitioners are husband and wife, residing at East Grand Forks, Minn. They timely filed a joint U.S. Individual Income Tax Return (Form 1040) with the district director of internal revenue for the district of Minnesota for each of the calendar years 1959 and 1960. Hereafter, petitioner Jerome Mortrud will be referred to as petitioner.

Petitioners used the cash receipts and disbursements method of accounting in computing their taxable income for the taxable years involved. Petitioners itemized their deductions.

During the years 1959 and 1960 petitioner was engaged in the operation of two wholesale dairy routes. He operated the routes as an independent contractor. In this operation he purchases and resells dairy products, pays his own expenses, and owns the truck used for making deliveries.

Petitioner usually makes the deliveries himself. However, in the event of sickness, vacation, or similar circumstances, petitioner is responsible for securing a substitute driver to make deliveries.

Petitioner is responsible for servicing his dairy routes 6 days per week. The routes are termed "route A" and "route B" and such routes are serviced on alternate days of each week.

Route A begins and ends at Grand Forks, N. Dak., which is situated just across the State line from East Grand Forks, Minn. Intermediate delivery points on this route consist of the following towns located in North Dakota: Grafton, Auburn, St. Thomas, Hoople, Edinburg, Park River, Minto, Gilby, and Emerado. The total round trip distance of this route is approximately 162 miles.

Route B also begins and ends at Grand Forks, N. Dak. Intermediate delivery points on this route consist of the following towns located in North Dakota: Grafton, Minto, Gilby, and Emerado. The total round trip distance of this route is approximately 94 miles.

In the operation of route A petitioner customarily leaves Grand Forks, N. Dak., between 4 and 6 a.m., completes his deliveries, and arrives at Grand Forks not later than 7 p.m. In the operation of route B, petitioner customarily leaves Grand Forks, N. Dak., between 4 and 6 a.m., completes his deliveries, and arrives at Grand Forks not later than 4 p.m.

The operation of these routes was a daily routine matter.

During the years involved petitioner spent $612.70 in 1959 and $614.90 in 1960 to purchase meals consumed during working hours. He deducted these amounts on the joint returns as expenses of doing business. The respondent disallowed the claimed deductions and, in a statement attached to the deficiency notice, explained the disallowance thus:

(a) The deduction of * * * [appropriate amount inserted] claimed for meals expense has been disallowed because it has not been established that it constitutes an ordinary and necessary business expense or was expended for the purpose designated. Therefore, your taxable income is increased in the amount of * * * [appropriate amount inserted].

The respondent no longer contends that the amounts were not "expended for the purpose designated" for the parties have stipulated that the amounts were spent by petitioner "to purchase meals consumed during working hours."

The applicable statutes regarding both issues are in the margin.[1] (Note: Par. (2) of sec. 162(a) is not applicable to issue 2.) The provisions of the 1954 Code which we have set out in the margin "are in effect the same as the correlative sections contained in the 1939 Code and accordingly decisions construing similar provisions in the 1939 Code are applicable herein." *Commissioner* v. *Janss*, 260 F. 2d 99 (C.A. 8, 1958), reversing on other issues a Memorandum Opinion of this Court.

The phrase "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business" first appeared in section 214(a)(1), Revenue Act of 1921, and has remained in all the revenue acts and revenue codes, without change, until section 162(a)(2) of the 1954 Code was amended by section 4(b) of the Revenue Act of 1962 by striking out "(including the entire amount expended for meals and lodging)" and inserting in lieu thereof "(including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances)." This amendment is only applicable to taxable years ending after December 31, 1962.

In S. Rept. No. 275, 67th Cong., 1st Sess., Calendar No. 289, 1939–1 C.B. (Part 2) 181, 191, the Senate explained the phrase in section 214(a)(1), Revenue Act of 1921, as follows:

Section 214 allows substantially the same deductions in computing net income as are authorized under existing law, but adds the following provisions: (1) The deduction for business expenses is extended to include all traveling expenses incurred while away from home in the pursuit of a trade or business * * *

Much to the same effect was H. Rept. No. 350, 67th Cong., 1st Sess., 1939–1 C.B. (Part 2) 168, 177; section 213 later changed to section 214.

The decisions on the question here involved are too numerous to mention. Twice the question has reached the Supreme Court with dissenting opinions in both cases. See *Commissioner* v. *Flowers*,

---

[1] I.R.C. 1954:
SEC. 62. ADJUSTED GROSS INCOME DEFINED.
For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:
(1) TRADE AND BUSINESS DEDUCTIONS.—The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.
SEC. 162. TRADE OR BUSINESS EXPENSES.
(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
*   *   *   *   *   *   *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *
SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.
Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

326 U.S. 465 (1945); *Peurifoy* v. *Commissioner*, 358 U.S. 59 (1958).[2]

The Supreme Court, in the *Flowers* case, in dealing with a similar question under section 23(a)(1)(A) of the 1939 Code, said in part:

Three conditions must thus be satisfied before a traveling expense deduction may be made under § 23(a)(1)(A):

(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.

(2) The expense must be incurred "while away from home."

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer * * *. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

\*      \*      \*      \*      \*      \*      \*

Failure to satisfy any one of the three conditions destroys the traveling expense deduction.

In the *Flowers* case the Supreme Court held that the taxpayer there involved failed to meet the third condition. In the instant case the argument of both parties centers around the second condition.

In the *Peurifoy* case the taxpayer was a construction worker who was employed at Kingston, N.C., for several continuous periods which ended in 1953. He maintained an established residence elsewhere in North Carolina, and he deducted his expenses for meals and lodging at the jobsite in Kingston and his transportation cost back to his residence. The Commissioner disallowed the deduction. We allowed it on the ground that the employment in Kingston was "temporary" rather than "indefinite" and that the taxpayer was, therefore, "away from home."[3] The Court of Appeals for the Fourth Circuit reversed our decision on the ground that our finding was "clearly erroneous" because Peurifoy's employment was "indefinite" rather than "temporary" and that, therefore, Kingston was his "tax home" and the taxpayer was not "away from home."[4] The Supreme Court, in a *per curiam* opinion (with three dissents), affirmed the Court of Appeals.

In the instant case petitioner contends that the amounts of $612.70 and $614.90 spent during 1959 and 1960, respectively, "to purchase meals consumed during working hours" are deductible as ordinary and necessary business expenses under section 162(a)(2) of the 1954 Code. Respondent contends that the cost of such meals is "personal, living, or family expenses" and specifically nondeductible under section 262 of the Code. Both petitioner and respondent cite pro and con, re-

---

[2] Also, for a comprehensive review and discussion of many of the leading cases on this subject, including the *Flowers* and *Peurifoy* cases, see Haddleton, "Traveling Expenses 'Away From Home,'" 17 Tax L. Rev. 261 (1962).

[3] 27 T.C. 149.

[4] 254 F. 2d 483.

spectively, *Hanson* v. *Commissioner*, 298 F. 2d 391 (C.A. 8, 1962), reversing 35 T.C. 413. The opinion in that case was based almost entirely on the so-called overnight rule, and the Eighth Circuit held that the fact that Hanson had not been absent from home overnight was no reason under the statute for denying to him his travel expenses while he was away from home. The Court of Appeals recognized that there are many tests other than that present in the *Hanson* case. One of the tests the court mentioned was the so-called daily-routine test. In discussing that rule, in *Charles H. Hyslope*, 21 T.C. 131, we said:

> We are also unable to agree that the $545 which petitioner spent for meals was a properly deductible expense under either section 22(n)(2)[1] or 23(a)(1)[2] of the Code. We think the amount so spent falls within the ambit of section 24(a)(1)[3] and is, therefore, not deductible.
>
> The petitioner was regularly employed within an area, the most distant point of which was not more than 20 miles from his home. There is no showing that he was away from home for any extended time or at any great distance during the year in question * * *. Such travel as he did was daily routine and, hence, cannot come within the scope of our decision in *Kenneth Waters*, 12 T.C. 414 (1949). As we said in *Fred Marion Osteen*, 14 T.C. 1261 (1950): "* * * The petitioner was in no essentially different position from the worker who is unable to have one of his meals at home." * * * [Footnotes omitted.]

We followed the same test in *Fred Marion Osteen*, 14 T.C. 1261, wherein we denied to a railway mail clerk expenses for meals where he was making a daily run covering 6 hours and 15 minutes from his hometown in Greenville, S.C., to Charlotte, N.C., a round trip distance of about 200 miles. In that case we said:

> The petitioner was in no essentially different position from the worker who is unable to have one of his meals at home. His regular day's work, though it took him away from his home town, was less than seven hours, perhaps shorter than the work day for the ordinary worker. * * * The fact that the meal was eaten at Charlotte offers no material difference. * * *

In commenting on the *Osteen* case in *Williams* v. *Patterson*, 286 F. 2d 333 (C.A. 5, 1961), the U.S. Court of Appeals said: "The Tax Court, properly, we think, denied Osteen a deduction for meals at Charlotte."

See also *Louis Drill*, 8 T.C. 902 (cost of meals held to be personal); and *Sam J. Herrin*, 28 T.C. 1303 (truckdriver who regularly ate all three meals during his daily turnaround run of 346 miles in approximately 14 hours, held not "away from home" within the intendment of section 23(a)(1)(A), I.R.C. 1939).

In the instant case we think what petitioner was doing day after day and week after week in the operation of his dairy business was purely routine. His tax home was in Grand Forks, N. Dak., and its general surroundings. *Mort L. Bixler*, 5 B.T.A. 1181, 1184. He was not in a travel status as that term is generally understood. *Fred G. Armstrong*, 43 T.C. 733 (1965). He was merely making a turnaround run in his business. The turnaround run was approximately 162 miles

one day and 94 miles the next day. He covered the same route and territory on alternate days, week after week. There is no evidence that he had to take time out for rest and sleep. Cf. *Williams* v. *Patterson, supra*. In other words, he was not traveling away from the general surroundings of his tax home. He was simply not "away from home" within the intendment of the statute. He was merely executing a daily routine of his business much the same as the worker referred to in *Fred Marion Osteen, supra*.

In *Fred G. Armstrong, supra*, we recently applied the daily-routine test to a brakeman employed by a railroad who daily boarded a train in Glasgow, Mont., for a tour of duty of 10 to 16 hours during which time the train would make a turnaround run covering 250 miles. During the course of a daily trip, the brakeman would purchase two meals, the cost of which he sought to deduct. In denying the claimed deduction, we said in part:

> The "travel" performed by petitioner was part of his everyday employment. His daily routine included the reporting to his home terminal in the morning. There he would board the work train and commence the performance of his duties as a brakeman. At this point he was in no different position than the average white-collar worker who reports to his desk each morning to start performing his duties. It just happens that while petitioner was performing his daily duties the train was moving and covered a distance of 250 miles during a period of 10 to 16 hours. In contrast, the place where the white-collar worker performed his daily duties remained stationary. We are of the opinion that the mere movement of the place where petitioner performs his routine duties does not place him in a *travel status* as we feel is required by section 162(a)(2). * * * [Emphasis supplied.]

In *Hanson* v. *Commissioner, supra*, while Hanson's home, office, and shop buildings were all located in Washington, Iowa, he erected culverts and bridges at different places throughout the State. His construction business required him to be first at one place and then at another, whereas petitioner in his business visited the same places at substantially the same time day after day and was never away from the general surroundings of his tax home. Hanson never remained at the same place for any substantial length of time. In our report in the *Hanson* case (35 T.C. 413), we did not apply the daily-routine test to Hanson as we did not think it was applicable to the facts there involved.

The significance of the "routine" doctrine is that the taxpayer was at all times within the general surroundings of his tax home where he was carrying on his daily labors. The deduction for travel expenses is to reimburse the taxpayer for costs incurred while in a travel status away from home. It is fundamental in the tax law that personal and family living expenses are not normally deductible. Sec. 262, *supra*. It is recognized that when one is absent from home in the pursuit of his business his normal expenses at home nonetheless continue and

it is only fair that the additional outlay incurred while away should be deductible as an expense. Having in mind the purpose for granting the deduction, the respondent sought to apply as a rule of thumb the so-called overnight test in which he would disallow any travel expenses if the taxpayer returned to his home at night.[5] But even the Commissioner has made some concession to this rule where the nature of the employment requires that the employee be released from work to obtain necessary sleep or rest prior to the completion of the journey, the cost of which is conceded to be deductible even though the taxpayer returns to his home at night. See *David G. Anderson*, 18 T.C. 649; *Williams* v. *Patterson, supra*. It may be accepted that if a taxpayer is absent from his home overnight his absence is of such duration that he may be regarded as in a travel status.

Another test is the distance and time one is absent from his tax home. Traveling a short distance therefrom may be considered as not being away from home but, if the duration is an extended one, even a short distance from one's home may be sufficient to entitle the taxpayer to the deduction. All of this brings us to the unsatisfactory conclusion that each case must be decided on its facts and the troublesome thing is that different people look at the same facts in different ways, and it may be added that Courts of Appeals frequently see the facts in a different light.[6]

It may be noted that petitioner is an independent contractor whereas the taxpayers in the cases we have cited were employees. For the purposes of determining whether a taxpayer is "traveling * * * while away from home" this difference is immaterial. In the case of an independent contractor, he claims the deduction under sections 62(1), *supra*, and 162(a)(2), *supra*. In the case of an employee, he claims the deduction under sections 62(2)(B)[7] and 162(a)(2), *supra*. Section 62 does not create any new deductions.[8] It merely sets out the deductions otherwise allowable that can be used in determining adjusted gross income. For instance, section 62(2)(B) allows all the

---

[5] See the regulations mentioned in fn. 1 of *Hanson* v. *Commissioner*, 298 F. 2d 391 (C.A. 8, 1962), which were made applicable to the tax years beginning after Dec. 31, 1957, namely, secs. 1.162–17(b)(3)(ii), 1.162–17(b)(4), and 1.162–17(c)(2).

[6] Among other things, the Eighth Circuit, in *Hanson*, said:
"That the problem presents difficulty is obvious from the lack of uniform holdings and the failure to have evolved a rule which would be a satisfactory guide in all situations. Merit is found in some of the tests referred to when applied to their peculiar fact situations which brings us to that rather unsatisfactory conclusion that these cases must be decided according to their own sets of facts."

[7] SEC. 62. ADJUSTED GROSS INCOME DEFINED.
(2) TRADE AND BUSINESS DEDUCTIONS OF EMPLOYEES.—
* * * * * * *
(B) EXPENSES FOR TRAVEL AWAY FROM HOME.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

[8] See H. Rept. No. 1365, 78th Cong., 2d Sess., 1944 C.B. 838, 839; and S. Rept. No. 885, 78th Cong., 2d Sess., 1944 C.B. 877, 878.

deductions "allowed by part VI" which embraces sections 161 through 180 and thus includes section 162(a)(2), *supra*. Thus, we apply section 162(a)(2) whether the taxpayer is an independent contractor or an employee. In *Hanson*, Hanson was an independent contractor in 1954 but an employee in 1956. Cf. *Carroll B. Mershon*, 17 T.C. 861, 864.

In summary, we hold that petitioner's tax home was in Grand Forks, N. Dak., and its general surroundings; that in his daily routine petitioner was not in a travel status away from his home; and that the expenses for meals here in question were personal expenses and not deductible. We sustain the respondent's determination as to this issue.

### Issue 2

During the taxable years involved, the shirt, jacket, and cap worn by petitioner in the operation of his dairy routes had stitched thereon the emblem "Mortrud Dairy." The trousers worn by petitioner in the operation of his dairy routes were made of material identical with the material used in making the jacket and cap. The trousers were the same color (dark green) as the jacket and cap.

Petitioner spent $142.60 during the year 1959 and $214.94 during the year 1960 for the replacement and cleaning of the above-described clothing and deducted these amounts on the joint returns as expenses of doing business. The respondent disallowed the claimed deductions and, in a statement attached to the deficiency notice, explained the disallowance thus:

(b) The deduction of * * * [appropriate amount inserted] claimed for uniforms and cleaning expense has been disallowed because it has not been established that it constitutes an ordinary and necessary business expense or was expended for the purposes designated. Therefore, your taxable income is increased in the amount of * * * [appropriate amount inserted].

The respondent no longer contends that the amounts were not "expended for the purposes designated." The parties now agree that two-thirds of the above amounts spent for the replacement and cleaning of the above-described clothing which is $95.07 for 1959 and $143.29 for 1960 is attributable to the shirts, jackets, and caps worn by petitioner in the operation of his dairy routes, and that one-third of the above amounts, or $47.53 for 1959 and $71.65 for 1960, is attributable to the trousers so worn. The trousers are not adaptable to general wear.

The respondent now concedes that the amounts attributable to the shirts, jackets, and caps are deductible as ordinary and necessary business expenses, thus leaving the amounts attributable to the trousers still in dispute.

On the basis of the above facts, we hold that the cost of the trousers and the cleaning thereof in the amounts of $47.53 for 1959 and $71.65

for 1960 are deductible as ordinary and necessary business expenses under sections 62(1) and 162(a) of the 1954 Code. *Marcus O. Benson*, 2 T.C. 12, affd. 146 F. 2d 191 (C.A. 9, 1944); *Eleanor E. Meier*, 2 T.C. 458; *Helen Krusko Harsaghy*, 2 T.C. 484.

*Decision will be entered under Rule 50.*