Harold McAvoy and Jennie L. McAvoy v. Commissioner.
McAvoy v. Commissioner
Docket No. 1489-63.
United States Tax Court
T.C. Memo 1965-289; 1965 Tax Ct. Memo LEXIS 43; 24 T.C.M. (CCH) 1617; T.C.M. (RIA) 65289; October 29, 1965
*43 During the taxable years 1957 through 1960 petitioners, husband and wife, maintained a residence in Forest Hills, Long Island, New York. The husband had been an employee of the Post Office Department in New York City since 1935. In 1946 he was elected president of the National Association of Post Office Mail Handlers, Watchmen, Messengers and Group Leaders, AFL-CIO, and was granted an indefinite leave of absence from the Department to attend to his duties as president of the Association. He held this office from 1946 through the taxable years. The business office of the Association was in Washington, D.C. During the taxable years in question Jennie remained in New York where she was employed and Harold spent approximately 300 days each year in Washington looking after the business of the Association. While in Washington he stayed at a hotel and had most of his meals there. Held, the cost of Harold's meals and lodging while in Washington is personal, living expenses, and not allowable as ordinary and necessary expenses of traveling "while away from home" as that phrase is used in sections 62(2)(B) and 162(a)(2), I.R.C. 1954. John J. McBurney, for the petitioners. Francis O. McDermott, *44 for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1957 through 1960 in the amounts of $1,247.75, $1,297.61, $1,417.38 and $1,501.76, respectively. The errors assigned by petitioners are: (1) that the respondent erred in disallowing the cost of hotel rooms and meals for the calendar years 1957 through 1960 in the respective approximate amounts of $4,875, $5,025, $5,325, and $5,475, and (2) that the respondent erred in disallowing medical deductions for the calendar year 1960 in the approximate amount of $3,087.90. Findings of Fact Some facts are stipulated and are found accordingly. Petitioners, Harold and Jennie L. McAvoy, [1] are husband and wife. They filed joint Federal income tax returns for the calendar years 1957, 1958, 1959, and 1960 with the district director for the Brooklyn District of New York. Petitioner Harold McAvoy, sometimes hereinafter referred to as petitioner, is an employee of the National Association of Post Office Mail Handlers, Watchmen, Messengers and Group Leaders, AFL-CIO, sometimes hereinafter *45 referred to as the Association. Petitioner serves as the duly elected president of the Association and has held that position continuously since 1946. The Association is a labor organization representing the mail handlers, watchmen, messengers and group leaders employed in the United States Postal Service. It is an affiliate of the AFL-CIO, and has its national headquarters in Washington, D.C. The primary objective of the Association is to unite and represent the above-named classifications of employees on a local, regional and national level in adjudicating grievances with the administration and to receive the petitions of the members for presentation to Congress and to the Post Office Department at Washington. Petitioner, in his capacity as national president on a full-time basis, deals mainly with problems of national importance before the Post Office Department in Washington, and, when necessary, appears before Congressional committees and meets with various Congressmen to discuss Union problems. During the taxable years 1957 through 1960 petitioners maintained a residence in Forest Hills, Long Island, New York. During these years, petitioner Jennie L. McAvoy remained in New York *46 where she was employed, and petitioner spent approximately 300 days each year in Washington looking after the business of the Association. While in Washington petitioner stayed at a hotel and had most of his meals there. During these years his wife resided at the Forest Hills residence. Prior to his employment as national president of the Association, petitioner, on May 16, 1935, had been appointed as a laborer by the U.S. Post Office Department and assigned to the New York City Post Office. On August 16, 1946, petitioner was granted an indefinite leave of absence to attend to his duties as president of the Association. Since 1946 petitioner has had the status of leave without pay pursuant to the employment practices of the Post Office Department to grant such leave to allow an employee to devote full time to a national office to which he has been elected by an employee organization. As a result of his employment with the Association, petitioner received the following amounts from the Association during the period indicated: Year
Amount Received
1957
$10,000.00
1958
13,215.35
1959
13,200.00
1960
21,327.92
Payments of the above amounts were made by check to the petitioner every two weeks and *47 designated as "Honorarium allowance and Legislative expense." The Association did not require a prior accounting by the petitioner for these payments. On their joint Federal income tax returns for the taxable years 1957 through 1960 the petitioners listed claimed expenses which were deducted from the petitioner's receipts from the Association and the remaining difference, if any, was included in gross income as follows: 1957
1958
1959
1960
Total Amount Received
$10,000.00
$13,215.35
$13,200.00
$21,327.92
Claimed Expenses: Railroad fares
$ 1,475.00
$ 1,235.45
$ 1,196.00
Hotel room and meals
3,530.00
3,794.62
5,980.32
Incidental expenses
4,330.00
7,599.63
5,389.63
Administ. Legislation
$16,683.02
Postage
1,112.00
Miscellaneous
445.00
Hospitalization
3,087.90
Total Claimed Expenses
$ 9,335.00
$12,629.70
$12,565.95
$21,327.92
Amount included in gross income
$ 665.00
$ 585.65
$ 634.05
None Of the above "claimed expenses" the respondent in the determination of the deficiencies herein, allowed and disallowed amounts as follows: 1957
1958
1959
1960
Allowed
$3,747.10
$ 6,882.50
$ 6,498.95
$11,437.02
Disallowed
5,587.90
5,747.20
6,067.00
9,890.90
Total claimed expenses
$9,335.00
$12,629.70
$12,565.95
$21,327.92
The respondent determined that the disallowed *48 amounts were personal living expenses which should have been included in petitioners' gross income. In Exhibit A attached to the deficiency notice the respondent itemized the "disallowed" amounts, as follows: 1957
1958
1959
1960
Cost of hotel rooms - 300 days
$2,250.00
$2,400.00
$2,700.00
$2,850.00
Cost of meals - 300 days
2,625.00
2,625.00
2,625.00
2,625.00
Sub total
$4,875.00
$5,025.00
$5,325.00
$5,475.00
Transportation to visit his family
183.90
193.20
213.00
213.00
Other personal living expenses: Clothing
137.00
137.00
137.00
137.00
Medical
76.00
76.00
76.00
3,087.90
Taxi, bus, etc.
148.00
148.00
148.00
148.00
Other - Gifts, Tobacco, candy, etc.
168.00
168.00
168.00
830.00
Total personal living expenses of petitioner
$5,587.90
$5,747.20
$6,067.00
$9,890.90 In a statement attached to the deficiency notice the respondent explained the above amount of $5,587.90 for 1957 as follows: It is held that the amount of $5,587.90 received from The National Association of Post Office and Postal Transportation Service Mail Handlers, Watchmen and Messengers, in the year ended December 31, 1957, as shown in Exhibit A, is includible in gross income in accordance with the provisions of Section 61 of the Internal Revenue Code of 1954. It is further *49 held that expenses in a like amount are not deductible under the provisions of Section 62 or any other section of the Internal Revenue Code of 1954. Similar explanations were made for the above amounts of $5,747.20, $6,067, and $9,890.90 for the years 1958, 1959, and 1960, respectively. During the year 1960 petitioner was hospitalized in Doctor's Hospital in New York City. In connection with his hospitalization, petitioner incurred medical and hospital expense in the amount of $3,087.90 for which the petitioner was reimbursed in full by the Association. The Association had never paid any other employee's medical or hospital expenses prior to this time nor was any employee hospital benefit or surgical plan then in effect. In addition to the $3,087.90 included in the above "claimed expenses" for 1960 of $21,327.92, petitioners, as a part of their itemized deductions on page 2 of their 1960 return, claimed the amount of $2,276.55 for medical and dental expense. The respondent in his determination of the deficiency for 1960 allowed petitioners a deduction for medical expenses of $4,969.08 which he explained as follows: Adjusted gross income reported
$ 4,912.00
Add: Adustment (a)
9,890.90
Adjusted gross income corrected
$14,802.90
Medicines
350.00
Less: 1% of adjusted gross income
$ 148.03
Balance
$ 201.97
Other medical expenses re-
ported
$2,123.30
Additional medical expenses
3,087.90
5,211.20
Total medical expenses
$ 5,413.17
Less: 3% of adjusted gross income
444.09
Allowable medical expenses
$ 4,969.08
Medical expenses claimed in return
2,276.55
Additional deduction
$ 2,692.53
Opinion *50 Of the amounts of the "claimed expenses" disallowed by the respondent, petitioners have assigned as error only the disallowance of petitioner's cost of meals and lodging during the 300 days he was in Washington each year in the amounts of $4,875, $5,025, $5,325, and $5,475, for the years 1957, 1958, 1959, and 1960, respectively, and the $3,087.90 of medical expense for 1960. There is no merit in petitioners' assignment of error as to the medical expense item. Our facts clearly show that petitioner was reimbursed in full for the $3,087.90 of medical and hospital expense incurred by petitioner at the Doctor's Hospital. While the respondent has properly included the amount of $3,087.90 in petitioners' gross income, he has allowed the full amount (plus some other medical expenses) as a deduction, subject only to the statutory limitations of 1 percent of adjusted gross income for medicines and 3 percent of adjusted gross income for medical. We, therefore, sustain the respondent's determination as to the medical expense item for 1960. As to the assignment of error relating to petitioner's cost of meals and lodging during the 300 days he was in Washington each year, the applicable sections *51 of the Internal Revenue Code of 1954 are in the margin. [2] *52 The provisions of the 1954 Code which we have set out in the margin "are in effect the same as the correlative sections contained in the 1939 Code and, accordingly, decisions construing similar provisions in the 1939 Code are applicable herein." Commissioner v. Janss, 260 F. 2d 99 (C.A. 8, 1958), reversing on other issues a Memorandum Opinion of this Court. See also Jerome Mortrud, 44 T.C. 208. The solution to the "away from home" problem in the instant case is much more obvious than it was in the Mortrud case. This Court has consistently held that the word "home" as used in the statute means the taxpayer's principal place of business or employment. Mort L. Bixler, 5 B.T.A. 1181, 1184; Grover Tyler, 13 T.C. 186, 192; Harold R. Johnson, 17 T.C. 1261, 1263; O'Toole v. Commissioner, [3]243 F. 2d 302 (C.A. 2, 1957), affirming a Memorandum Opinion of this Court; Robert A. Coerver, 36 T.C. 252 affd. per curiam 297 F. 2d 837. Here, the petitioner's principal place of business or employment was definitely Washington, D.C. The fact that he chose to maintain the family residence *53 in New York is immaterial. Commissioner v. Flowers, 326 U.S. 465 (1946). The taxpayer in the Flowers case continued to reside with his family in Jackson, Mississippi, while his principal place of business or employment was in Mobile, Alabama. He was denied a claimed deduction in 1939 and 1940 for traveling expenses incurred in making trips from Jackson to Mobile and the cost of meals and hotel accommodations while in Mobile. Among other things, the Supreme Court in the Flowers case said: The meaning of the word "home" in § 23(a)(1)(A) with reference to a taxpayer residing in one city and working in another has engendered much difficulty and litigation. 4 Mertens, Law of Federal Income Taxation (1942) § 25.82. The Tax Court n4 and the administrative rulings n5 have consistently defined it *54 as the equivalent of the taxpayer's place of business. * * * [Footnotes omitted.] In Peurifoy v. Commissioner, 358 U.S. 59 (1958), rehearing denied 358 U.S. 913 (1958), the taxpayer was a construction worker who was employed at Kinston, N. Car. He maintained an established residence elsewhere. He deducted his expenses for meals and lodging in Kinston and his transportation cost back to his residence. The Commissioner disallowed the deduction. We allowed it on the ground that the employment in Kinston was "temporary" rather than "indefinite" and that the taxpayer was, therefore, "away from home." [4] The Court of Appeals for the Fourth Circuit reversed our decision on the ground that our finding was "clearly erroneous" because Peurifoy's employment was "indefinite" rather than "temporary" and that, therefore, Kinston was his "tax home" and the taxpayer was not "away from home." [5] The Supreme Court, in a per curiam opinion (with three dissents), affirmed the Court of Appeals. We think the facts of this case clearly show that petitioner's "tax home" during the taxable years in question was in Washington, D.C., and not in New York. Therefore, the cost of *55 the meals and lodging while in Washington was not incurred "while away from home" and is not deductible under either section 62(2)(B) or section 162(a)(2) of the 1954 Code. Of course, petitioners contend otherwise for they rely principally upon the dissenting opinion in Peurifoy v. Commissioner, supra, and upon the Fifth Circuit's decision in Flowers v. Commissioner, 148 F. 2d 163 (C.A. 5, 1945), which had reversed a Memorandum Opinion of this Court but was in turn reversed by the Supreme Court in Commissioner v. Flowers, supra. We hold that the said costs were personal, living expenses and fall within the provisions of section 262 of the 1954 Code. The respondent's determination is sustained. Decision will be entered for the respondent. Footnotes
1. Also referred to in the record as Jennie S. McAvoy.↩
2. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *. SEC. 62. ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: * * *
(2) Trade and Business Deductions of Employees. - * * *
(B) Expenses For Travel Away From Home. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * * SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
3. In the O'Toole case the Second Circuit said: "Home" as used in the statute means the taxpayer's principal place of business or employment. The job, not the taxpayer's pattern of living, must require the traveling expenses. Carragan v. Commissioner of Internal Revenue, 2 Cir., 1952, 197 F. 2d 246, 249; Commissioner of Internal Revenue v. Flowers, 1946, 326 U.S. 465, 66 S. Ct. 250, 90 L. Ed. 203↩.
4. 27 T.C. 149↩. 5. 254 F. 2d 483↩.