WILLIAM A. BAGLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1870–63.   Filed May 4, 1966.

*Arthur E. Bean, Jr.*, for the petitioner.
*Raoul E. Paradis*, for the respondent.

DAWSON, *Judge:* Respondent determined deficiencies in income tax against the petitioner for the taxable years 1960 and 1961 in the amounts of $377.92 and $372.02, respectively.   The only issue presented by the parties for decision is whether amounts expended by petitioner for meals on business trips during which he did not stay away from home overnight are deductible under section 162(a)(2) of the Internal Revenue Code of 1954.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

William A. Bagley (hereinafter called petitioner) is a resident of Milford, N.H.   He filed his Federal income tax returns for the years 1960 and 1961 with the district director of internal revenue for the district of New Hampshire.

On his 1960 and 1961 income tax returns the petitioner listed his

occupation as "Consulting Engineer." At an undisclosed time prior to the taxable years the petitioner retired from General Electric Co., where he had been employed for many years in the engineering department. Although he does not have a formal engineering degree, the petitioner's service with General Electric was in the specialized field of automatic control, or automation, of power-generating stations.

Since his retirement from General Electric, the petitioner has rendered engineering and consulting services with regard to automation of generating stations to various public utility companies and industrial plants in the New England area. During 1960 and 1961, the taxable years involved herein, he performed services of that nature for Public Service Co. of New Hampshire, White Mountain Power Co., and Central Maine Power Co. He was also employed part time by the General Electric Co. in Manchester and vicinity.

The services which the petitioner performed for Public Service Co. and similar companies included preparing wiring diagrams, supervising the installation of equipment, adjusting the equipment after installation, and training personnel in the operation of the equipment. During the taxable years in issue the petitioner's standard rate of compensation for such services was $100 per day, plus expenses.

The petitioner, who is a widower, lived alone in 1960 and 1961 in a large house in Milford. He used three rooms in the house as an office and working space in which he kept a desk, office chairs, telephone, blueprint table, bookcase, instruction books, technical data, testing equipment and component parts therefor, drawings, and blueprints.

During 1960 the petitioner performed services in connection with the automation of generating stations at Salmon Falls and Somersworth, N.H. Salmon Falls is 70 to 75 miles from Milford and Somersworth is a little over 70 miles. In connection with this work petitioner spent 73 days at the two generating stations performing engineering services for which he charged $100 per day. Some work, such as making wiring diagrams, for which the $100 charge was made, he did in his office at Milford. He also charged for his expenses in traveling to and from the station and for his lunches but for no other meals. Prior to doing the actual engineering work petitioner spent approximately 115 days during 1960 visiting the generating stations, prior to doing the engineering work, to obtain information and study the equipment in use. For these trips he received no compensation or allowance for expenses incurred in making the trips. For travel he charged about 10 cents a mile.

During 1961 petitioner performed services in connection with the automation of generating stations at Bristol and Hillsboro, both in New Hampshire. Bristol is approximately 70 miles and Hillsboro approximately 32 miles from Milford. In connection with this work

petitioner spent 83 days at the two generating stations performing services for which he charged $100 per day. Prior to doing the actual engineering work for which he made his charge of $100 per day and expenses petitioner spent approximately 67 days during 1961 visiting stations for which he made no charge and he was not reimbursed for his expenses.

After each trip to the generating stations during 1960, the petitioner returned to his home the same day. During 1961, he stayed overnight on several occasions in hotels and motels while on trips in connection with his business. On April 12, he stayed in Augusta, Maine, which is approximately 200 miles from Milford. On August 27, and again on October 18 and 19, he stayed in Intervale, N.H., which is approximately 100 miles from Milford. From October 30 through December 1, he stayed in Antrim, N.H., while working on the job at Hillsboro because the necessities of that job required him to remain on call near the station at all times. On December 21, he stayed in Woodstock, Vt., while attending an engineering meeting. On December 24, he stayed in Manchester, while returning to Milford from the job at Bristol, because of adverse weather conditions. In connection with these overnight stays, the petitioner incurred expenses of $225.88 for meals and lodging.

Petitioner seldom ate his meals at home even when in Milford because he did not like to cook or wash dishes.

During the periods in 1960 when he was performing services in connection with the automation of the generating stations at Salmon Falls and Somersworth, N.H., petitioner would leave his house at approximately 6 a.m. and would usually eat his breakfast at a hotel in Manchester approximately 20 miles from Milford on the route to Salmon Falls or Somersworth, where he would do his day's work. He would eat his lunch in the vicinity of the generating station where he was working. He would eat his dinner on the way back to Milford for the night, usually at the hotel in Manchester.

While working at the generating station at Bristol in 1961, his schedule and routine were generally comparable except that he would usually eat his breakfast and dinner at a motel in Concord approximately 35 miles from Milford.

In 1960 and 1961 the petitioner usually did not reach Milford until shortly after 10 p.m.

When petitioner returned to his home and office late in the evening he sometimes used his technical books and data, answered business correspondence, received telephone calls, and prepared diagrams and drawings necessary for his work.

On his returns for 1960 and 1961 petitioner reported $8,310.75 and $9,267.10 as receipts from his business or profession. These amounts included both his compensation and the amounts received as allowance

for expenses. The expenses covered both his meals and his automobile expense. The compensation received from the General Electric Co. was separately reported as wages.

He claimed deductions as business expenses of $3,491.46 for 1960 and $3,987.93 for 1961. Of the amounts so deducted $1,020 for 1960 and $979 for 1961 were claimed as "living expenses away from home while on business trips." These deductions of $1,020 and $979 were disallowed by the respondent in his notice of deficiencies for the stated reason that they "represented nondeductible personal or living expenses."

The total amounts expended by the petitioner for meals on the days during which he was away from Milford in pursuit of his trade or business were not less than $1,020 in 1960 and $979 in 1961.

OPINION

Section 262 of the Internal Revenue Code of 1954 provides that "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living or family expenses." That the cost of meals is a personal living expense is not an open question and such costs are not therefore deductible unless "otherwise expressly provided." However, in 1960 and 1961, section 162(a)(2)[1] provided that "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business" shall be allowed as a deduction. It is under this provision that the petitioner seeks to deduct the cost of his meals.

The facts show that petitioner's home was in Milford and neither party contends otherwise. The facts are equally definite that on the days here pertinent the work being done by petitioner was at three localities away from Milford by distances ranging from 70 to 75 miles.[2] Even so, petitioner drove back to Milford for the night, and according to respondent it is this fact which makes the provisions of section 162(a)(2) inapplicable.

The sole question framed by the parties is whether petitioner is entitled to deduct the amounts he spent for meals on 1-day business trips where he was not absent from his home overnight. Thus the parties have attempted to place the validity of the Commissioner's "overnight" rule squarely in issue. This case, at least in principle, is somewhat similar to *Hanson* v. *Commissioner*, 298 F. 2d 391 (C.A. 8, 1962),

---

[1] Sec. 162(a)(2) was amended by sec. 4(b) of the Revenue Act of 1962 by striking out "(including the entire amount expended for meals and lodging)" and inserting in lieu thereof "(including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances)." This amendment is only applicable to taxable years ending after Dec. 31, 1962.

[2] The plant at Hillsboro was approximately 32 miles from Milford but while on that job petitioner did not return home each night. Respondent now concedes that petitioner was away from home on business on that job and that his expenses for meals and lodging are deductible.

reversing 35 T.C. 413 (1960). Petitioner contends that the decision of the Court of Appeals in *Hanson* should be followed by this Court because the so-called overnight rule is not supported by the statute. Respondent, on the other hand, urges us to reject the rationale of *Hanson* and again reiterate our long-standing approval of his overnight rule in denying claimed deductions for the cost of meals. See and compare *Fred Marion Osteen*, 14 T.C. 1261 (1950); *Sam J. Herrin*, 28 T.C. 1303 (1957); *Joseph M. Winn*, 32 T.C. 220 (1959); *Al J. Smith*, 33 T.C. 861 (1960); and *Allan L. Hanson*, 35 T.C. 413, 417 (1960).

It is quite apparent that the overnight rule has had a stormy past. When the Commissioner argued in *Kenneth Waters*, 12 T.C. 414 (1949), that a taxpayer could not deduct business *transportation* costs because they did not involve overnight trips, we refused to sustain him. stating (pp. 416–417):

"Travel * * * while away from home" in its "plain, ordinary and popular" sense means precisely what it says. It means travel while away from one's home. There is no connotation that the trip must be an overnight one, nor do we think Congress intended such a connotation.

In *Chandler* v. *Commissioner*, 226 F. 2d 467 (C.A. 1, 1955), reversing 23 T.C. 653 (1955), the Court of Appeals held that automobile expenses incurred by the taxpayer in going to and from his place of secondary employment in another city were deductible travel expenses, and that he was "away from home" in the statutory sense when he traveled to such city, although he did not remain there overnight. Then, by admitted dicta, the Court of Appeals said (p. 470):

We now consider the following question: Should the phrase "away from home" be interpreted to mean "away from home overnight?" * * *

* * * If so, the apparently plain meaning of a simple and unambiguous phrase is transformed thereby from "while away from home" into something like "while far away from home overnight."

It seems to us that such changes are more in the nature of legislation than interpretation and accordingly go beyond the rule-making power of the Internal Revenue Service.

With the enactment of the Internal Revenue Code of 1954 the concept of "adjusted gross income" was broadened to permit a deduction for unreimbursed transportation expenses. See sec. 62(2)(C). The Senate Finance Committee report [3] stated:

At present, business transportation expenses can be deducted by an employee in arriving at adjusted gross income only if they are reimbursed by the employer or if they are incurred while he was away from home overnight.

However, in the report on page 169 the reference is to expenses incurred "away from home" with no mention of "overnight." The single

---

[3] S. Rept. No. 1622, 83d Cong., 2d Sess., p. 9 (1954). H. Rept. No. 1337, 83d Cong., 2d Sess., p. 9, is identical.

reference in the report states the committee's view of pre-1954 law. Actually the reference to "overnight" was not necessary to explain the change in law since unreimbursed local transportation of an employee would have been nondeductible in computing adjusted gross income, and the scope of "travel away from home" was only an incidental issue. Nevertheless, the Commissioner has relied on this single reference to the word "overnight" in his defense of the rule with respect to meals. See Rev. Rul. 63–239, 1963–2 C.B. 87.

In *Hanson*, the taxpayer was a construction contractor whose home office and shop buildings were located in Washington, Iowa. He maintained personal supervision over his business. His work required trips to various job sites where he had contracts. On some of the trips which took him away from his home in Washington he was able to return on the same day. On other trips he remained away from home overnight. He took deductions for meals, lodging, and transportation expenses on all of these business trips. The Commissioner allowed all the expenses except those incurred for meals on the trips on which Hanson was not away from home overnight. The basis for the Commissioner's disallowance was Rev. Rul. 54–497, 1954–2 C.B. 75, where he ruled that the phrase "away from home" in section 162(a)(2) means away from home overnight. We upheld the Commissioner. The Court of Appeals for the Eighth Circuit reversed us. As to the validity of the overnight rule, the Court of Appeals said it "is merely an arbitrary line-drawing, having no basis in the statute." Moreover, the Court of Appeals, in rebutting the concept that a taxpayer cannot be away from home without remaining away overnight, stated (p. 396) :

The same reasoning is equally applicable to the meals the employee eats in Washington on the two hypothetical trips, one of a single day's duration and the other of two. We fail to see reason or justification for the Commissioner's claim that the meals on a two-day trip are nonpersonal and deductible, while those on a one-day trip are personal and nondeductible, when such claim is based on whether an overnight trip was involved (or if there was at least a need for rest). * * *

The *Hanson* decision put the Eighth Circuit substantially in accord with the Fifth Circuit which reached the same conclusion in *Williams* v. *Patterson*, 286 F. 2d 333 (C.A. 5, 1961), allowing a deduction for the meals of a railroad conductor during a 6-hour layover in Atlanta on a nonovernight trip. There Judge Wisdom said (pp. 335–336) :

Second, we note particularly that there is no language in the statute limiting its application to "expenses incurred while * * * away from home overnight".[6] The "overnight" gloss was dreamed up by the Department. Third, there is nothing in the statute indicating any congressional intent that "away from home" means either overnight or away from home for a period substantially longer than an ordinary working day,[7] or that it means "a trip on which the

taxpayer's duties [in his released time] required him to obtain necessary sleep away from his home terminal." [8]

We recognize the administrative advantages of a rule of thumb for defining the term, "away from home". We concede it is reasonable to formulate a rule that will enable the Bureau to distinguish between an employee put to the expense of taking a bus or street-car to work and a traveling salesman with a territory to cover.[9] Between these extremes, however, there are innumerable borderline situations, especially in the transportation field, that cannot be measured by the length and breadth of a thumb.

[Footnotes omitted.]

In Rev. Rul. 61–221, 1961–2 C.B. 34, the Internal Revenue Service announced that it would follow the *Patterson* modification of the overnight rule, which was similar to the one made by this Court in *David G. Anderson*, 18 T.C. 649 (1952), involving rest on a cot on the employer's premises. Yet in Rev. Rul. 63–239, 1963–2 C.B. 87, the Internal Revenue Service indicated its disapproval of the *Hanson* decision and its intention not to follow it.[4] While relying heavily in the revenue ruling on the consistent application of the overnight rule (or probably now more appropriately labeled the "substantial sleep or rest" rule) as an administrative matter, the Commissioner cited no publication to this effect before Rev. Rul. 54–497, and the rule is still not part of the substantive provision—sec. 1.162–2, Income Tax Regs., relating to traveling expenses. The word "overnight" is, of course, obliquely mentioned in sections 1.162–17(b)(3)(ii), 1.162–17(b)(4), and 1.162–17(c)(2) of the regulations, adopted in 1958, but merely as a distinction to be observed in records.[5] We note that the *Hanson* case involved the taxable years 1954 and 1956, while the regulations apply only to taxable years beginning after December 31, 1957. But we also note that the Eighth Circuit intimated that the addition of the word "overnight" in the regulations might be considered to be an arbitrary qualification unwarranted by the statutory language.

Hence, in spite of *Hanson*, the respondent argues that the overnight rule continues to be valid in all situations, viz, expenses of meals taken on 1-day business trips are nondeductible personal expenses. After careful consideration of our own opinion in the *Hanson* case in the

---

[4] Rev. Rul. 63–239 reads, in part, as follows:

"It is apparent from the legislative history that Congress adopted that amendment with clear recognition of the 'overnight' rule. Of equal or greater significance are the plain statements in the Committee Reports that the new deduction is restricted to business transportation expenses incurred when not away from home in travel status and that business transportation expenses do not include the cost of meals and lodging. Hence there are ample grounds for concluding that Congress intended to retain the 'overnight' rule with respect to expenses incurred for meals on nonovernight trips, as to which the Service had consistently prevailed in litigation under both section 22(n)(2) and section 23(a)(1)(A) of the 1939 Code. Compare *Commissioner* v. *Sally L. Bilder*, 369 U.S. 499 (1962), Ct. D. 1871, C.B. 1962–1, 38."

[5] We note that in 1963 the Treasury Department suggested the substitution of an "hour-distance" test for the "overnight" rule. See Report of Hearings before Committee on Ways and Means, pp. 92–93.

light of the comments made by the Court of Appeals, we cannot agree with the respondent. As the Supreme Court has often said, "the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses." *Crane* v. *Commissioner*, 331 U.S. 1, 6; *Hanover Bank* v. *Commissioner*, 369 U.S. 672, 687–688. Slavish adherence to the overnight rule does not always provide the right answer, particularly where, as here, the taxpayer traveled substantial distances from his home (and business office) and was "away from home" on business spanning a period beyond the ordinary workday. We have asked ourselves: In every situation does a strict application of the overnight rule really make sense? And, secondly, has Congress clearly given its approval to an inflexible rule disallowing expenses incurred for meals on nonovernight trips? On reflection we believe both of these questions must be answered in the negative.

We do not deny that the overnight rule is one of administrative convenience. Indeed, it provides simplicity and certainty. But just as most rules of law yield to exceptions, so too must administrative workability yield to logic, reason, and justice. Therefore, in line with the general views expressed by the Courts of Appeal in *Williams*, *Hanson*, and *Chandler*, we will no longer follow the overnight rule as an absolute guide in every situation. There is merit in the "hour-distance" test and other tests when applied to exceptional factual patterns. Consequently, each such case will be decided according to its own facts.

On the facts before us here we hold that the petitioner is entitled to deduct the amounts expended for meals while he was away from home in pursuit of his business.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

WITHEY, *J.*, dissents.

———

TURNER, *J.*, concurring in the result: I concur in the result herein but for reasons which will appear hereafter I do not concur in various of the pronouncements appearing in the opinion.

The question is comparatively simple as are the facts. Petitioner was an independent contractor, engaged during the 2 years herein primarily in planning and supervising the automation of generating stations in New Hampshire, three of which, the only projects now involved, were located 70 to 75 miles from Milford, also in New Hampshire, where petitioner had his home.

Prior to the actual automation, petitioner spent a goodly number of days at each particular station to obtain information to be used as the basis for the work later to be done. For this he made no charge and received no allowance for expenses incurred.

Some preparatory work for which he did charge, such as making wiring diagrams, he did in his office and did not involve travel away from Milford. Aside from such work at home his only work on the various projects, insofar as shown, was at the particular power station where he happened to be working at the time, but he nevertheless chose to drive home each night though it meant a drive back the next morning, a round trip of 140 to 150 miles, before he could resume his work. There was no work on the way to and from his home.

For the work at his office, such as the preparation of the wiring diagrams and his supervisory work in the actual transition of the particular station to automation, petitioner charged for his services $100 per day. His charge for transportation was 10 cents per mile. He also charged for the cost of his lunches. He ate his breakfast and dinner on the way to and from his work but made no claim for reimbursement therefor, for the stated reason that he was already charging as travel expense more than the cost of such two meals plus what lodging would have cost had he remained at the station where he was working rather than returning to Milford each night.

For the Hillsboro job, which was only 32 miles away, he stayed in the vicinity of the station each night and there is now no dispute that he is entitled to deduction for meals as well as lodging while on that job.

The statute is not complicated or involved, even though under certain variations of facts it can be difficult of application. By section 262 of the Code it is provided that "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses." There is no dispute that the cost of meals is a personal living expense.

In section 162(a)(2) it is "otherwise expressly provided" that "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business" shall be allowed as a deduction, and the sole question is whether petitioner's cost of meals were such expenses "while away from home in the pursuit of a trade or business" within the meaning of the statute.

The respondent in his determination of deficiency allowed deduction of the travel costs incurred by petitioner in his nightly trips back to Milford and of his return to work the next day but disallowed deduction of the cost of his breakfast and dinner on the way to and from work and of his lunch while there. In support of such disallowance he cited and relied on such cases as *Fred Marion Osteen*, 14 T.C. 1261, and *Sam J. Herrin*, 28 T.C. 1303. *Jerome Mortrud*, 44 T.C. 208, to the same effect has since been decided. In some of those cases the taxpapers traveled even greater distances than petitioner here. There is, however, this difference. There the taxpayers began their day's work in their home area and finished their day's work at the same place.

Their work took them out and their work brought them back. They merely interrupted their work at mealtime wherever they happened to be and in that there was no material difference from the worker whose post of duty was not transitory.

The petitioner, on the other hand, seeks to bring his case within *Hanson* v. *Commissioner*, 298 F. 2d 391, reversing 35 T.C. 413. In that connection he makes two contentions, one that as in *Hanson* his trips home at night from stations at which he was working were occasioned by the requirements of his business, and, second, that the so-called overnight rule is not supported by the statute.

Petitioner did testify broadly, after the manner of pronouncements in the *Hanson* opinion, that his trips home did have a business purpose and based on that testimony argues that his case is thus brought under the reversing decision of the Court of Appeals in the *Hanson* case.

The Court here has not seen fit to accede to the request for a finding of fact which goes quite that far, but has made a finding that when petitioner returned home late in the evening he *sometimes* used his technical books and data, answered business correspondence, received telephone calls, and prepared diagrams and drawings necessary for his work. Apparently, however, it does not regard that finding as an adequate basis for applying the *Hanson* rule since it has not so applied it.

Having seen and heard the testimony of petitioner, the only witness, I do not think his testimony merits any serious consideration of a finding that his return home at night was in fact motivated by a business purpose. Aside from the lateness of the hour of his return to Milford and early hour of departure from Milford to return to his work at the power station, the testimony consisted of conclusions and generalities. There was the matter of telephone calls which would come in late at night and blueprints to be received in the mail. The only telephone calls specified were those to or from a typist-secretary who lived in Boston and no reason is shown as to why such calls as between Boston on the one hand and Salmon Falls, Somersworth, or Bristol rather than Milford on the other would not have been the normal logical business course when the cost and wear and tear of the drive to and from home are taken into account. Furthermore, where the blueprints expected had to do with the particular job under way the logical and reasonable place for them to have been sent would seem to be Salmon Falls, Somersworth, or Bristol and most certainly there is no showing or suggestion that any such blueprints did not have to do with the particular job on which petitioner happened to be working at the time, or if they did not petitioner needed to receive them in Milford for the doing of whatever had to be done with respect to them prior to the conclusion of the instant job. Furthermore, there was the job at Hillsboro when, even though only

32 miles away, petitioner did not return home at night and there was no suggestion that there were any anticipated or experienced acts necessary to his work requiring him to return to Milford on any one of the nights from October 30 through December 1, 1961, while he was working at Hillsboro. On the other hand, the record is to me not only persuasive but convincing that petitioner's trips back to Milford at night were by reason of personal preference and desire rather than business considerations.

Actually, petitioner does not, in my opinion, do his case justice in his effort to make it fit *Hanson*. The facts in *Hanson* more nearly resembled those of the turn around cases such as *Osteen* and *Herrin*, the only really notable difference being that in *Osteen* and *Herrin* the trip out and back was the same each day, whereas in *Hanson* it did not always follow the same course, but it did cover stops on the way to and from, some as close as 8 miles from the starting point. *Hanson* is not this case. Petitioner's work in the instances here pertinent was never at more than one place at a time, each 70 to 75 miles from Milford. There was no work to and from his home. Further, I think the Court does both itself and the law, and more particularly Congress, a disservice in embracing the *Hanson* case as authority for its pronouncements here.

In addition it seems to me that it took its interpretation of the law deeper into the maze of confusion in its effort to explain away what the Committee on Ways and Means and the Committee on Finance of the Senate had to say about existing law, particularly what was reenacted without change as section 62(2)(B), in explanation of the purpose of section 62(a)(C) which enacted for the first time in the Internal Revenue Code of 1954, allowed the deduction by an employee "of expenses of *transportation* paid or incurred by the taxpayer in connection with the performance by him of services as an employee" (emphasis supplied) in arriving at adjusted gross income.

First the majority opinion notes that the committee explained that "*At present business transportation expenses can be deducted by an employee in arriving at adjusted gross income only* if they are reimbursed by the employer or *if they are incurred while he was away from home overnight.*" (Emphasis supplied.) As already noted, the reference there was to existing law reenacted without change as section 62(2)(B) of the 1954 Code, which for the purpose of arriving at adjusted gross income, allowed the deduction "of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee."

Later in their reports the committees in further explaining the purpose and intent of the new section 62(2)(C) stated that "Transportation expenses which are 'ordinary and necessary expenses paid or

incurred during the taxable year in carrying on any trade or business' and are not 'personal, living, or family expenses' are allowed" under the new subparagraph (C). They went on to explain the limitations of the new provision by explaining further the meaning of existing 62(2) (B), to the effect that "The term 'transportation' is a narrower concept than 'travel' and does not include meals and lodging but includes only the cost of transporting the employee from one place to another when he is not away from home in a travel status. *If the employee is away from home in a travel status his expenses would be deductible under sub-paragraph (B)*." (Emphasis supplied.)

With respect to this latter part of the committee report, the Court's opinion seems to draw comfort for its conclusion here from the fact the word "overnight" was not repeated and from the observation that actually the reference to "overnight" was not necessary and the scope of "travel away from home" was no more than incidental, the implication being that the committee indulged in needless effort in explaining that if the employee was "away from home in a travel status" his transportation costs were already deductible under subparagraph (B), which as explained earlier in their reports would be the case "only * * * if they are incurred while he was away from home overnight." However one may feel about it or the necessity for saying it, that is what the Committee on Ways and Means and the Committee on Finance did say in their reports, as to the deductibility under section 62(2) (B) of expenses of travel, meals, and lodging "while away from home," incurred or paid by an employee in connection with the performance by him of services as such, and we must, or at least should, I think, conclude that the committees, in connection with the enactment of the law by Congress, did feel that it was important to say it.

Not only did Congress so speak through its committees but it re-enacted the provisions of both sections 62(2) (B) and 162(a) (2) without change, as, with respect to the provisions of 162(a) (2), it had theretofore done repeatedly. In that connection it is to be observed that the majority opinion makes no suggestion that the words "while away from home" have a different meaning in section 162(a) (2) from the same words in section 62(2) (B).

On the facts here I see no need actually to become deeply enmeshed in an argument about the so-called overnight rule. Taking into account the facts relating to the work at Salmon Falls, Somersworth, and Bristol, the distances and hours of travel, including the hour of his return at night and the hour of his departure from Milford the next morning, they, in my opinion, indicate a rather obvious situation of "being away from home in travel status" within the meaning of the statute. Certainly if petitioner had followed what to me, under the facts here, would have been the normal course, by staying overnight at the station where he was to resume work the next morning, he

would beyond question have been in travel status away from home on business and the cost of his meals as well as the cost of his lodging would have been allowable and would have been allowed, as note for instance respondent's concession that the cost of meals and lodging incurred during work at Hillsboro were and are allowable. Hillsboro is only 32 miles from Milford. Salmon Falls, Somersworth, and Bristol are 70 to 75 miles from Milford and by returning home each night a trip of 140 to 150 miles per day was required. Not only that, but petitioner was required to start back for his job at 6 in the morning and arrived back in Milford late at night, often only a little before 10 at night.

On the facts here, it is my opinion that it was the trip home at night which was personal rather than business and that if nondeductible personal expenses were incurred they were the cost of the travel back home at night, thus requiring also the cost of return to work the next morning, not the cost of meals. The petitioner gives support to this view in his explanation of the reason for not charging the cost of his breakfast and dinners to his employer. In my opinion petitioner "was away from home in travel status," to use the words of Committees on Ways and Means and on Finance, and the cost of his meals were deductible as travel expenses within the meaning of section 162(a)(2).

Certainly neither *Williams*, *Hanson*, nor *Chandler*, relied on by the majority, were this case (and with respect to *Chandler* the opinion even labels what was said insofar as it might be pertinent here as dicta) and to reach into the opinions in those cases merely for the sake of outlawing use of the term "overnight," something Congress not only refrained from doing, but to the contrary denoted that it regarded it as useful in expressing its overall intent, is not to me in furtherance of the established and accepted function of the Tax Court to contribute to settlement of the meaning of the law. And not only that but in my reading of what is said it tends to foster litigation by casting a cloud over such cases as *Osteen*, *Herrin*, and now *Mortrud*.

———

MULRONEY, *J.*, concurring in result: I think this case is indistinguishable from *Hanson* v. *Commissioner*, 298 F. 2d 391, reversing 35 T.C. 413. In both cases the Commissioner allowed deduction for the taxpayer's transportation expenses for out-of-town business trips that did not require the taxpayer staying away from home overnight. In each case it is stated that the sole issue is as to deduction for meal expenses where he was not absent from his home overnight. Contrary to the statement made in the majority opinion, I, for one, think the application of the overnight rule makes as much sense as any other rule that could be stated. After all, it merely disallows the business

day meal expense of the workman who leaves home in the morning and returns to his home at the end of his working day which is not very startling in view of the fact that such meal expense is generally considered personal and not business. However, since the Eighth Circuit Court of Appeals in the *Hanson* case cited above has held the overnight rule is arbitrary and not sanctioned by the statute (and I think this is a close question), I would merely follow that reversal of our prior position.

I would not agree that if the statute affords no basis for the overnight rule it would still sanction other tests for meal expense deductions for business day trips such as an "hour-distance" test, or some other test. Such new tests would seem to me to be at least as arbitrary as the overnight rule. Either the overnight rule is justified or no rule that disallows meal expense on any out-of-town business trip, however short in terms of time or distance, is justified.

---

SIMPSON, *J.*, concurring: I agree with the result reached in the majority opinion, but I believe that we should make clearer what we are doing.

It is clear that we are no longer applying the overnight rule in all cases, but it is not clear what rule is being substituted for it. The majority opinion may be read to hold that whenever a person travels a substantial distance from his home and is away for a long workday, and when such travel is for business purposes, he is away from home so that the costs of his meals are deductible. If this is our rule, we are in effect reversing such decisions as *Sam J. Herrin*, 28 T.C. 1303 (1957), *Allan L. Hanson*, 35 T.C. 413 (1960), and *Jerome Mortrud*, 44 T.C. 208 (1965); and I believe that we should say so. If we are not adopting such a "substantial distance and time" test, then I believe that we should make clear what test we are applying. There are many taxpayers who will be affected by this decision, and if we do not make clear whether the *Herrin*, *Hanson*, and *Mortrud* opinions are still in effect and what is the rule, then we are compelling people to engage in further litigation to learn the answer.

For my part, I would adopt a "substantial distance and time" test. I recognize that such a test would in some cases result in the allowance of a deduction for meals that did not absolutely have to be eaten away from home because of the taxpayer's business activities. For example, in this case the taxpayer has not shown that he was required to eat his meals while engaged in business traveling—he would not have eaten them at home in any event. Nonetheless, I would adopt the "substantial distance and time" test, because it is a rule of thumb that achieves substantially the right results, and because the advantage of certainty it offers outweighs its slight imperfection. If such test is

adopted, we must define substantial distance and time; but once those definitions are developed, the test will be a good deal simpler than to attempt to determine in each case whether the circumstances show that the meal had to be eaten while the person was engaged in business travel.